Milton E. JONES, Jr., Plaintiff,

v.

SAXON MORTGAGE, INC.,
et al., Defendants.

No. Civ. A. 3:96CV918.

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 5, 1997.

Henry W. McLaughlin, III, Central VA Legal Aid Soc., Richmond, VA, for Plaintiff.

Patrick R. Hanes, Robert D. Perrow, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

Milton E. Jones seeks damages and injunctive relief from Saxon Mortgage, Inc. ("Saxon") and Texas Commercial Bank ("TCB") for alleged violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and for alleged violations of Virginia's fraud and usury laws. Saxon and TCB have moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) & (6). For the reasons set forth below, their motion is granted.

### I. SUMMARY OF FACTS

For purposes of these motions, the pleaded facts must be taken as true and Jones must be given the benefit of all inferences. 2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed.1994). Hence, the following facts are stated according to those precepts.

In the summer of 1992, Jones engaged a mortgage broker, Mortgage and Equity Corporation ("the Broker"), to arrange refinancing of a residential mortgage loan secured by a deed of trust on his residence in Spotsylvania County. On October 23, 1992, Jones closed on a loan, obtained by the Broker from Lenders Financial Corporation ("Lenders"); but, by then, Jones was in desperate financial straits. Jones received less of the

loan proceeds then he had been led to believe by the Broker, largely because the closing costs for the loan were higher than the Broker initially represented. Additionally, Jones alleges that the TILA documents given to him at closing were defective because Lenders: (1) under-disclosed a $ 300.00 processing fee paid to the Broker [1]; (2) under-disclosed a $27 express mail charge ordered by the creditor; and (3) failed to include a notice explaining his statutory right to rescind the transaction.

Lenders and the Broker had an agreement by which Lenders agreed to pay a "kickback" to the Broker for steering loans to Lenders. Additionally, Saxon had a standing agreement with Lenders to purchase qualifying loans from Lenders. Under that agreement, if Saxon purchased a loan made by Lenders to a qualifying borrower at an interest rate greater than the rate quoted by Saxon (referred to as the "par" or yield rate), then Saxon would pay Lenders a "bonus".[2] The Broker and Lenders knew that, if they could convince Jones to accept a loan at an interest rate higher than Saxon's par rate, the Broker and Lenders would net more money from the transaction than if the loan had been made at Saxon's going rate. Therefore, according to Jones, the Broker and Lenders deliberately delayed arranging his loan so that they could force him to accept a loan on which their net return would be increased. Jones alleges that, in July of 1995, he first became aware of the "kickback" arrangement between Lenders and the Broker and of the "bonus" agreement between Saxon and Lenders.

In November 1992, Lenders sold Jones' promissory note and the deed of trust to Saxon which, in turn, assigned the note and the deed of trust to TOP, as trustee. Soon after the loan was made, Jones fell into arrears on his payment obligations. This, say Jones, was because the Broker and Lenders had delayed placement of the loan for so long that he was in difficult financial circumstances by the time he received the proceeds.

Saxon instructed TCB to institute foreclosure proceedings because Jones was in default. Having received the notice of foreclosure proceeding, on December 6, 1993, Jones filed a pro se action in the Circuit Court for Fairfax County, Virginia, alleging that the Broker and Lenders had violated his rights under the TILA and had defrauded him. In October 1994, Jones' residence (the property securing the loan) was sold at foreclosure. On February 10, 1995, Jones voluntarily took a non-suit in the *pro se* action filed in the Circuit Court for Fairfax County, Virginia.

However, Jones continued to occupy the foreclosed premises after the foreclosure sale. To remove Jones from the property, TCB instituted, and prevailed in, an unlawful detainer action against Jones in the Circuit Court for Spotsylvania County, Virginia. Jones unsuccessfully appealed the decision in the unlawful detainer action to the Supreme Court of Virginia and the Supreme Court of the United States. Jones was evicted from the residence in July 1996.

Meanwhile, on August 10, 1995, Jones had filed a second suit in the Circuit Court for Fairfax County. In that action, Jones alleged violations of the TILA and named Saxon and TCB as defendants. Jones sought rescission of the loan; however, Jones moved for entry of a non-suit, without prejudice, and, on November 12, 1996, the Circuit Court for Fairfax County granted that motion.

Two days later, November 14, 1996, Jones filed this action in this Court. Here, Jones has invoked federal question jurisdiction on the same TILA claims which were the subject of the two previous actions filed, and non-suited, in the Circuit Court for Fairfax County. Jones seeks to have his fraud and usury claims heard under supplemental jurisdiction. 28 U.S.C. § 1367.

## II. THE RIGHT TO RESCIND PURSUANT TO 15 U.S.C. § 1635(f)

The parties agree that the October 23, 1992 loan transaction was a consumer credit

---

1. Jones alleges that all fees paid to the Broker should have been disclosed as part of the cost of the loan because the creditor because the Broker was a secret agent for the debtor.

2. Saxon alleges that this "bonus" was based on the difference between the present value of the loan at the rate of interest in the promissory note and the present value of the loan if it had been made at Saxon's yield rate.

transaction covered by 15 U.S.C. §§ 1635, 1638 & 1640. However, the parties dispute whether Jones exercised, in a timely manner, his absolute right to rescind, conferred by § 1635(a). Under 15 U.S.C. § 1635:

> (a) . . . the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with the regulations of the Board, of his intention to do so. . . . The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
>
> . . . .
>
> **Time limit for exercise of right**
>
> (f) An obligor's right of rescission **shall expire three years after the date of consummation of the transaction or upon the sale of the property,** whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor. . . .

15 U.S.C. § 1635 (emphasis added); *see also* 12 C.F.R. 226.23(a)(3).

Congress "specifically designated the Federal Reserve Board and staff as the primary source of interpretation and application of truth-in-lending-law." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 567, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). The Division of Consumer and Community Affairs of the Federal Reserve Board, Official Staff Commentary provides:

> *3. Unexpired right of rescission.* When the creditor has failed to take the action necessary to start the three-business day rescission period running, the right to rescind automatically lapses on the occur-

rence of the earliest of the following three events:

> ● The expiration of three years after the consummation of the transaction.
>
> ● Transfer of all the consumer's interest in the property. . . .
>
> A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind.

12 C.F.R. Pt. 226.23, Supp. I (1997).

Jones contends that the failure of Lenders to provide the forms for use in exercising his rescission rights under § 1635(a) entitles him to exercise the right of rescission within the three year limitation period specified in § 1635(f). Saxon and TCB respond that § 1635(f) is a statute of repose; and that, therefore, the October 23, 1994, foreclosure sale terminated the right to rescind. Jones concedes [3] that § 1635(f) is a statute of repose, but he argues that this action was timely filed because the limitation period is tolled.

## III. EQUITABLE TOLLING

Generally, statutes of limitations and statutes of repose are not subject to equitable tolling. *See Webb v. United States,* 66 F.3d 691, 700 (4th Cir.1995), (typically, statutes of repose are not subject to tolling) *cert. denied,* —— U.S. ——, 117 S.Ct. 1079, 137 L.Ed.2d 215 (1997); *First United Methodist Church v. United States Gypsum Co.,* 882 F.2d 862, 865–66 (4th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990). *But see Greyhound Corp. v. Mt. Hood Stages Inc.,* 437 U.S. 322, 337 n. 21, 98 S.Ct. 2370, 2378 n. 21, 57 L.Ed.2d 239 (1978) (statute of repose may be subject to equitable tolling); *id.* at 338, 98 S.Ct. at 2379 (C.J.Burger, concurring); *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 558, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974); *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 427 n. 2, 85 S.Ct. 1050, 1054 n. 2, 13 L.Ed.2d 941 (1965). *Cf. King v. California,* [4]

---

3. At oral argument Jones agreed with Saxon and TCB that § 1635(f) is a statute of repose.

4. However, in that same case the court stated that "Congress placed a three year **absolute** limit on rescission actions". *King,* 784 F.2d at 914.

784 F.2d 910, 915 (9th Cir.1986) (finding the TILA's one year limitation on damages subject to equitable tolling) *cert. denied,* 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987).

■ The Court of Appeals for this circuit has not decided whether the rescission period provided in § 1635(f) is a statute of limitation or as a statute of repose. However, no matter which characterization is ascribed to § 1635(f), this action is barred unless the limitation period was tolled. For the reasons which follow, Jones cannot prevail on his tolling theory.[5]

■ The doctrine of equitable tolling is applied sparingly. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). Jones relies on two of the several possible grounds for equitable tolling. First, Jones alleges fraudulent concealment, claiming that he "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* (citing *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Second, Jones asserts that equitable estoppel applies here because he "has actively pursued his judicial remedies by filing a defective pleading during the statutory period". *Irwin,* 498 U.S. at 96, 111 S.Ct. at 458 (citing *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). These general principles, however, must be considered in the context of equity's basic rule that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 155, 104 S.Ct. 1723, 1727–28, 80 L.Ed.2d 196 (1984). This principle finds expression in the tolling theories on which Jones relies. As explained below, Jones has not acted diligently and for that reason and others, his claim of tolling must fail.

**5.** Jones' argument that he fulfilled all of the requirements of § 1635(f) by simply filing and then non-suiting an action under the TILA is meritless. Such a practice is repugnant to the interest of repose clearly embodied in § 1635(f). *See Hefferman v. Bitton,* 882 F.2d 379, 384 (9th Cir.1989) ("Congress probably enacted § 1635(f) because it worried that allowing a consumer to rescind" after the residence was sold "would cloud property titles and inhibit transactions."

## A. Fraudulent Concealment

■ To invoke the doctrine of fraudulent concealment as a grounds for equitable tolling, a plaintiff must demonstrate that: "(1) the *party pleading the statute* of limitations *fraudulently concealed* facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir.1995) (citing *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir. 1974)) (emphasis added).

■ Jones' claim of fraudulent concealment is based on the failure of Lenders and the Broker to own up to their improper kickback arrangement. Thus, this claim of fraudulent concealment fails simply because neither Saxon nor TCB, the parties pleading the bar of the statute, fraudulently concealed facts that were the basis for Jones' TILA claims. As explained above, it is a basic rule that there must be an identity between the party pleading the limitation period and the party who allegedly perpetrated the act of concealment. *Orsi v. Kirkwood,* 999 F.2d 86, 90 n. 1 (4th Cir.1993). The theory fails for the additional reason that the alleged acts of concealment, even if some how they could be linked to Saxon and TCB (which they are not),[6] must amount to more than a failure on behalf of the defendant to disclose the initial fraudulent conduct. Indeed, fraudulent concealment requires some act in addition to the commission of the initial fraudulent act because it "implies conduct ... affirmatively directed at deflecting litigation". *Pocahontas Supreme Coal Co. v. Bethlehem Steel,* 828 F.2d 211, 218–19 (4th Cir.1987). Here, the initial acts of fraud certainly were not of that ilk.

(citing Federal Reserve Board, Annual Report to Congress on Truth in Lending for the Year 1972, reprinted in Cong. Rec. 4596, 4597 (1983)).

**6.** At oral argument, counsel for Jones admitted that neither Saxon nor TCB were privy to the acts of fraud committed by the Broker and Lenders.

In any event, Jones' failure to exercise due diligence precludes a tolling of the limitation period. "Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam. Merely bringing suit after the scheme has been laid bare ... will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss." *Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir.1993). Therefore, a party seeking to avoid a limitation period based on fraudulent concealment must supply "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made." *Charlotte Telecasters Inc. v. Jefferson Pilot Corp.* 546 F.2d 570, 573 (4th Cir.1976). Jones' general allegation that he first became aware of the kickback arrangements in July 1995 do not satisfy this requirement.

That is particularly true here because the *pro se* "motion for judgment" which Jones filed in state court on December 6, 1993, reflects that, at the time the loan was consummated, it was apparent to Jones the Broker was either dishonest, inept, or both. Specifically, Jones alleged in that action that: (1) the Broker had failed to secure a loan for the amount promised; (2) the Broker failed to secure a loan of the type promised; (3) the closing costs were almost three times more than the Broker initially represented they would be; and (4) the Broker failed to follow through on his promise to refund some of the costs of the loan. In the year following the making of the loan, Jones discovered that the Broker and Lenders had forged documents and had conspired to defraud him. Defs.' Reply Mem. Ex. C. It is clear from the face of the complaint that Jones' failure timely to litigate his rights under the TILA is attributable to his own lack of diligence rather than any act of fraud on the part of Saxon or TCB.

**B. Tolling Pursuant to *Burnett v. New York Central R.R.***

Jones also asserts that his situation is analogous to that of the plaintiff in *Burnett,*[7] and therefore the limitations period should be tolled for the time his TILA actions were pending in state court. In *Burnett,* the Supreme Court explained that: "the basic question to be answered in determining whether, under a given set of facts, a statute of limitations can be tolled, is one of legislative intent whether the right shall be enforceable after the prescribed time." *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965) (internal citation and quotation omitted). *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 557–58, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974) (tolling must be "consonant with the legislative scheme"). In *Burnett,* the Court held that it was not inconsistent with the legislative intent to toll the limitation period "when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process and the plaintiff's case is dismissed for improper venue." *Burnett,* 380 U.S. at 434, 85 S.Ct. at 1058.

A key purpose of the TILA is to enhance "economic stabilization" and competition through the informed use of credit. 15 U.S.C. § 1601(a). The TILA is a remedial statute enacted to provide consumers with a greater ability to shop for fair credit, and its rescission provisions are a significant component of that objective. However, Congress was also concerned that such unexpired rights could cloud titles to residential real estate and impair its marketability. *See Hefferman v. Bitton,* 882 F.2d 379, 384 (9th Cir.1989). Congress enacted § 1635(f) to eliminate uncertainty respecting unexpired rights of rescission. See Federal Reserve Board, Annual Report to Congress on Truth in Lending for the Year 1972, reprinted in 119 Cong. Rec. 4596, 4597 (1983).

7. *Burnett* involved an action under the Federal Employers' Liability Act brought in Ohio state court within the limitation period. The action was dismissed for improper venue. Eight days later the plaintiff filed the identical action in federal court, but this filing was after the statute of limitations had expired. *Burnett,* 380 U.S. at 424, 85 S.Ct. at 1052.

Congressional intent to eliminate uncertainty created by unexercised rescission rights would be undermined if Jones could present a rescission claim four years after the consummation of the transaction and two years after the sale of the property. Congress clearly intended that the consumer must litigate to a conclusion any rescission rights before a sale of the contested property. In that regard, it is significant that Jones cited and the Court could find no decisional authority which permitted a consumer to litigate a rescission claim under the TILA after the property was sold.

Finally, the equitable considerations which have been instrumental in other decisions finding that a limitation period was tolled are absent here. Unlike *Burnett,* Jones voluntarily dismissed his actions in state court. *See Goff v. United States,* 659 F.2d 560, 561–62 (5th Cir.1981) (prior federal suit voluntarily dismissed by the plaintiff did not toll the statute of limitations); *see also McGlenon v. Boeing Company,* 437 F.2d 433, 434 (9th Cir.1971) (declining to follow *Burnett* where prior action was dismissed for plaintiff's failure to answer interrogatories) *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir. 1982) (prior federal suit dismissed for failure to prosecute did not toll statute of limitations). Furthermore, unlike *Burnett,* Jones could have litigated his action in the state forum which he initially selected. His failure to move quickly and deliberately to prosecute his rights is an insurmountable obstacle to his assertion that the Court should lend the assistance of equity to permit the tardy pursuit of those claims here. *Cf. Burnett,* 380 U.S. at 426, 85 S.Ct. at 1053–54(plaintiff refiled eight days after dismissal of state action); *McCoy v. Harriman Utility Board,* 790 F.2d 493 (6th Cir.1986) (TILA consumer noticed creditor of her intention to rescind at the end the three-year period, then promptly filed suit two months later).

For the foregoing reasons, the right to rescind under the TILA, if there was one on the facts, expired when Jones failed to raise and resolve it before the sale of the residence at foreclosure or at the latest October 23, 1995, three years from the date of the loan. Jones' claim for damages under 15 U.S.C. § 1640 are barred by that provision's one year period of limitation. Hence, Jones' claims under the TILA must be dismissed with prejudice because they are untimely.

## IV. FRAUD AND USURY CLAIMS

Generally, the state law claims, over which the Court has supplemental jurisdiction, should be dismissed if the federal claims are dismissed before trial. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In light of the complex and novel questions of state law that, *i.e.* the res judicata and collateral estoppel defenses, the Court declines to exercise its supplemental jurisdiction over the fraud and usury questions. *Lewis v. United States,* 812 F.Supp. 620, 624 (E.D.Va.1992). The fraud and usury claims are dismissed without prejudice.

The action is dismissed.

The Clerk is directed to send a copy of this Order to counsel of record.

It is so ORDERED.