Michael J. EDWARDS, Plaintiff,

v.

Shelia E. WIDNALL, Secretary, Department of the Air Force, Defendant.

No. Civ. 3–96–611.

United States District Court, D. Minnesota.

Sept. 18, 1998.

Michael D. O'Neill, O'Neill, Grills & O'Neill, St. Paul, MN, for Plaintiff.

Mary Jo Madigan, Asst. U.S. Attorney, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

### INTRODUCTION

This matter came before the Court on Defendant's motion for dismissal, or, in the alternative, for summary judgment. For the following reasons, the motion for dismissal is granted in part and the motion for summary judgment is granted in its entirety.

### BACKGROUND

Plaintiff Michael J. Edwards is Chief of Security Police with the Minneapolis branch of the U.S. Air Force Reserve ("Reserve") and has been employed with the Reserve for the past 16 years. (Amended Compl. ¶ 6–7). To maintain security clearance for his position, Edwards is required to undergo a reinvestigation every five years. (Pl.Br. at 2). The reinvestigation consists of interviewing friends and associates of the employee and examining all relevant federal records. (Def.Br. at 8). The last security clearance of Edwards was conducted and completed in 1987. (Def.Exh.A, ¶ 5).

Edwards is responsible for initiating his own reinvestigation and in November 1992, he requested such an investigation. (Def.Br. at 3–4; Def.Exh. F). The investigation was conducted by an agent of the Minneapolis office of the Defense Investigation Service ("DIS"). The results of the investigation were sent to the Personnel Security Division ("PSD") in Washington D.C. in January 1994. The PSD concluded that Edwards' security clearance should be suspended pending adjudication so as to allow further evaluation of Edwards' security clearance. (Def.Br. at 1). Defendant claims that because the position of Chief of Security Police requires a security clearance, Edwards was removed from that position in February 1994 and was assigned to the position of Executive Officer. (Amended Compl. ¶ 20; Def.Br. at 2). Finally, in August 1994, Defendant informed Edwards of its intent to revoke his security clearance. (Amended Compl. ¶ 22). Edwards responded to the notice of intent and provided character statements. Edwards' security clearance was thereafter restored on January 21, 1995 and he was restored to the position of Chief of Security Police.

Defendant contends that it decided to issue the letter of intent to revoke based on Edwards' alleged financial irresponsibility in connection with his bankruptcy petition and a domestic abuse report filed against him in May 1993. (Def.Exh.D, ¶ 7). In October 1994, the bankruptcy court concluded that Edwards had completed all payments required and he was discharged from all dischargeable debts. (Def.Exh.J). Defendant claims that this resolution of Edwards' financial situation was critical in the final decision to restore Edwards' security clearance.

(Def.Exh. D, ¶ 8; Amended Compl. ¶ 23). Edwards concedes that he did not lose any pay due to his temporary assignment to the position of Executive Officer. (Edwards Depo. at 74).

Edwards claims that during the investigation for his security clearance, certain superiors made derogatory and false statements about him in retaliation for his support of a sexual harassment claim brought against the Air Force. In 1990, Amy Dunphy, a co-worker and girlfriend of Edwards', filed a sexual harassment suit against Defendant and certain individuals. (Edwards Aff. ¶ 2). In June 1992, Edwards gave a deposition in support of Dunphy and was the only employee who testified on her behalf. (Edwards Aff. ¶ 4). Edwards claims that those individuals alleged to have made false statements during his investigation were also the same individuals who disputed Dunphy's allegations. (Pl.Br. at 3–5).

■ In October 1994, Edwards filed a complaint with the EEOC, alleging claims for retaliation discrimination.[1] (Amended Compl. ¶ 22). The EEOC subsequently issued Edwards a notice of his right to sue. (Amended Compl. ¶ 26). Edwards then brought this action, alleging a claim of retaliation discrimination under Title VII. Edwards also brought two state law claims for negligent and intentional infliction of emotional distress, over which this Court has supplemental jurisdiction. All of Edwards' claims are asserted against the sole defendant Shelia Widnall, as Secretary of the U.S. Air Force.

This matter is now before this Court on Defendant's motion to dismiss, or in the alternative, a motion for summary judgment, on the basis that Edwards failed to timely initiate contact with the EEOC, the lack of subject matter jurisdiction over security clearance determinations, and Edwards' failure to establish a prima facie case of retaliation discrimination.

## DISCUSSION

For the purposes of the Defendant's motion to dismiss, the Court takes all facts alleged in the Complaint as true. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Furthermore, the Court construes the allegations in the Complaint and all reasonable inferences arising from the Complaint favorably to Edwards. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *Id.; see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court applies those standards in the following discussion.

Under Count I of the Amended Complaint, Edwards alleges a claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 701 et seq. Specifically, Edwards asserts that Defendant retaliated against him in violation of Title VII by "making false and derogatory statements regarding Edwards and in changing the terms and conditions of Edwards' employment." (Amended Compl. ¶ 29). Thus, Edwards asserts two grounds as the basis for his retaliation claim: (1) false and derogatory statements, and (2) changed terms and conditions of his employment.

---

1. Pursuant to 29 C.F.R. § 1614.105(a)(1), complainants are required to initiate contact with the EEOC within 45 days of the date of the matter alleged to be discriminatory. Defendant argues that because Edwards was demoted to the position of executive officer and received a copy of his investigation in February 1994, his initial contact with the EEOC in October 1994 was untimely.

Edwards' complaint to the EEOC was based on derogatory statements allegedly made by co-workers that adversely affected his security clearance. (Pl.Exh.I). Although Defendant asserts that Edwards received a copy of the DIS investigation which revealed the allegedly retaliatory statements made by co-workers in February 1994, Edwards claims that he did not learn of such statements until September 7, 1994, when he received Defendant's notice of intent to revoke his security clearance. Because this raises a material issue of disputed fact, dismissal is not warranted at this stage in the proceedings.

Furthermore, even if Edwards was aware of the allegedly retaliatory statements as early as February 1994, Edwards was not informed that his security clearance was to be revoked until September 1994. Because it was not until that date that Edwards could have been aware that such statements may have affected his security clearance, his initial contact with the EEOC in October 1994 should be deemed timely.

■ In regards to the second matter, Edwards argues that the terms and conditions of his employment were unlawfully changed when Defendant removed him from his position as Chief of Security Police and issued a notice of intent to revoke his security clearance. (Pl.Br. at 15). Although Edwards asserts that he is not seeking review of the merits of his security clearance, the Court concludes that consideration of whether Defendant unlawfully changed the terms and conditions of his employment as alleged would necessarily require review of matters not reviewable by this Court.

■ It is well-established law that courts do not have the authority to review the merits of security clearance determinations because of the discretionary nature of such decisions and because of the exclusive authority that the Executive Branch has over matters concerning national security. In *Dept. of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Supreme Court held that the decision to revoke security clearance for a Navy employee was not subject to review by the Merit Systems Protection Board. Recognizing the inherent authority of the Executive Branch to control matters regarding national security, the Court noted that discretionary matters regarding security clearances are decisions of such a kind that "must be made by those with the necessary expertise in protecting classified information" as opposed to "an outside nonexpert body." 484 U.S. at 529, 108 S.Ct. 818. The Court thus held that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." 484 U.S. at 530, 108 S.Ct. 818.

Although the Eighth Circuit has not ruled on the reviewability of such decisions, numerous circuits have extended *Egan* to hold that the merits of security clearance determinations are not judicially reviewable. *Perez v. Federal Bureau of Investigation*, 71 F.3d 513, 514–15 (5th Cir.1995) (courts lack subject matter jurisdiction to consider Title VII challenge to security clearance revocation), *cert. denied*, 517 U.S. 1234, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996); *Guillot v. Garrett*, 970 F.2d 1320, 1323–26 (4th Cir.1992) (courts cannot review security clearance determina-

tions for alleged violation of the Rehabilitation Act); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir.1990) (district court lacked jurisdiction to consider merits of a decision to revoke security clearance for the purposes of a motion for injunction against such revocation), *cert. denied*, 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991).

Edwards relies on the Supreme Court's decision in *Webster v. Doe* to argue that this Court has the authority to review Title VII claims arising from a security clearance revocation. In that case, the Court held that while the decision to discharge an employee of the Central Intelligence Agency was not judicially reviewable, nothing precluded judicial review of the employee's constitutional claims that he was fired because of his homosexuality. 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). But in *Webster v. Doe*, the CIA's stated reason for firing the employee was that his homosexuality allegedly presented a security threat. Therefore, consideration of the employee's constitutional claims did not require judicial review of the merits of his discharge.

However, in this case, this Court's consideration of Edwards' Title VII claim would necessarily require review of the merits of the decision to revoke his security clearance. To reiterate, Edwards asserts that Defendant unlawfully changed the terms and conditions of his employment by removing him from his position as Chief of Security Police and issuing a notice of intent to revoke his security clearance. Because the Chief of Security Police required security clearance, Defendant justifiably removed Edwards from that position. *Jones v. Dept. of Navy*, 978 F.2d 1223, 1226–27 (Fed.Cir.1992) (Navy could indefinitely suspend employees without pay during investigation to determine whether to terminate their security clearances). Thus, to the extent that Edwards alleges a retaliation claim based on the terms and conditions of his employment, it boils down to the question of whether Defendant's notice of intent to revoke security clearance was an act of retaliation in violation of Title VII.

Several circuits have recognized that because of the nature of Title VII analysis, Edwards' retaliation claim necessarily re-

quires judicial review of the merits of a security clearance determination. *Perez,* 71 F.3d at 514; *Brazil v. United States Dept. of the Navy,* 66 F.3d 193, 197 (9th Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). Under the *McDonnell Douglas* framework of analysis for Title VII claims, Edwards would bear the initial burden of establishing a prima facie case of retaliation. The burden is then on Defendant to show a legitimate, nondiscriminatory reason for its intent to revoke his security clearance. However, the burden would then shift back to Edwards to show that Defendant's proffered reasons were a pretext for retaliation. It is at this third step that the Court would then be required to delve into the merits of Defendant's security clearance determination because evaluation of Defendant's proffered reasons necessarily requires evaluation of the merits of such a determination.

The Court recognizes that the lack of judicial review over security clearance decisions creates the potential for abuse by federal agencies regarding the treatment of federal agents whose employment is so often dependent upon security clearances. The Court thus notes that by way of internal procedures for adjudicating employee complaints of discrimination, "the Executive Department ... bears a heavy responsibility and special duty of fairness to ensure that its agencies and bureaus do not trample the rights of their employees in employment matters." *Perez,* 71 F.3d at 514–15, n. 6.

▪ Therefore, to the extent that Edwards' retaliation claim is based on the merits of a security clearance determination, the Court concludes that it lacks subject matter jurisdiction to consider such a claim and it is properly dismissed. However, as noted above, Edwards' retaliation claim is also based on false and defamatory statements, which does not require review of the merits of security clearance matters. The Court thus maintains subject matter jurisdiction over the retaliation claim insofar as it is based on false and defamatory statements. However, upon Defendant's motion for summary judgment, the Court concludes that such claim is also properly dismissed.

## C. Prima facie case under Title VII

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). On a motion for summary judgment, the Court must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. *Burnham v. Ianni,* 119 F.3d 668, 673 (8th Cir.1997).

In order to establish a prima facie case of retaliation under Title VII, Edwards must show that (1) he engaged in a protected activity, (2) defendant took adverse action against him, and (3) the adverse action was causally linked to the protected activity. *Marzec v. Marsh,* 990 F.2d 393, 395–96 (8th Cir.1993); *Martin v. Local 1513 & District 118 of Int'l Asso. of Machinists and Aerospace Workers,* 859 F.2d 581, 585 (8th Cir. 1988). The parties do not dispute that Edwards engaged in protected activity by testifying in support of Dunphy's sexual harassment claim.

However, Defendant argues that Edwards has failed to show that any adverse action was taken against Edwards. As discussed above, the only remaining basis for the retaliation claim are the alleged retaliatory statements made by Edwards' superiors during investigation for his security clearance. Specifically, Edwards alleges that in 1993, three of his superiors gave various false, retaliatory statements to an investigator regarding the security clearance for Edwards. Such statements include allegations that Edwards allowed a process server on the base, that he once posted a lewd cartoon, that he was violent and verbally abusive, that he had an alcohol problem, that he could not be trusted, and that he hid his assets before filing bankruptcy. (Pl.Br. at 4–7). Edwards claims that such statements were made by individuals who opposed Dunphy's sexual harassment claims and were made in retaliation for Edwards' support of those claims. (Pl.Br. at 4–5).

■ Although none of those individuals are named as defendants in this case, Defendant can nevertheless be liable for such statements because they were made by supervisory employees. Thus, if Edwards can show that his supervisors used their authority to retaliate against him for protected activity, he need not also prove that Defendant knew or should have known of such retaliatory conduct. *Cross v. Cleaver II*, 142 F.3d 1059, 1072–74 (8th Cir.1998). However, the Court concludes that because Edwards has failed to show that such statements amounted to adverse action, there is no basis on which Defendant could be held liable.

The Eighth Circuit has previously held that negative evaluations or references *do* not amount to an adverse employment action under Title VII unless they are used as the basis for action against the employee. *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir.1997). Without getting into the merits of the security clearance determination in this case, the record shows that the decision to issue an intent to revoke clearance for Edwards was based on information far beyond that provided by the individuals who allegedly made retaliatory statements. (Def.Exh.D, Exh. 1). In fact, Defendant asserts that it intended to revoke security clearance for Edwards because of his financial irresponsibility and his domestic disputes, matters of which are largely separate from the alleged retaliatory statements. (Def.Exh.D, ¶ 7). Therefore, the Court concludes that Edwards has failed to sufficiently assert an adverse action as the basis for his Title VII claim.

■ Furthermore, Defendant ultimately decided to grant Edwards security clearance and he was reinstated to his position as Chief of Security Police one year later. While the investigation was pending, Edwards was temporarily assigned to the position of Executive Officer, which paid him the same amount as his previous position. (Edwards Depo. at 74). In the absence of a tangible change in duties or conditions that constitutes a material employment disadvantage, the Eighth Circuit has been unwilling to find employment decisions actionable under Title VII. *Manning v. Metropolitan Life Insurance Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997). In this case, Edwards complains to have suffered from humiliation, damage to his reputation, and mental pain and suffering as a result of his temporary assignment. However, the loss of status and prestige alone are not enough to constitute a sufficient adverse employment action. *Id.*

■ The above discussion disposes of the federal claim which is the basis for this Court's original jurisdiction. 28 U.S.C. § 1367(c)(3) provides that when a district court has dismissed the federal claims which invested it with original jurisdiction, it may decline to exercise jurisdiction over any claim over which it has supplemental jurisdiction. *Wilde v. County of Kandiyohi*, 811 F.Supp. 446, 455 (D.Minn.1993), *aff'd*, 15 F.3d 103 (8th Cir.1994). Whether to do so is committed to the discretion of the Court. *Hansen v. Lamontagne*, 808 F.Supp. 89, 95 (D.N.H. 1992). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered" will weigh against the exercise of supplemental jurisdiction. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). There are no special circumstances justifying departure from this general precept. Both of the state law claims are accordingly dismissed without prejudice.

## ORDER

Therefore, based upon the foregoing and all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is GRANTED as to Count I of the Complaint, insofar as it requires judicial review of a security clearance determination. In all other respects, the motion to dismiss is DENIED.

2. Defendant's motion for summary judgment is GRANTED as to the remaining claim in Count I of the Complaint.

3. Count I of the Complaint is therefore DISMISSED WITH PREJUDICE and the remaining claims in Plaintiff's complaint are DISMISSED WITHOUT PREJUDICE for lack of supplemental jurisdiction.

LET JUDGMENT BE ENTERED AC-
CORDINGLY.