Oneika EVANS, Plaintiff,

v.

RUDY–LUTHER TOYOTA, INC.,
a Minnesota Corporation,
Defendant.

No. Civ.98–1180 (JRT/RLE).

United States District Court,
D. Minnesota.

Jan. 15, 1999.

Thomas J. Lyons, St. Paul, MN, for Plaintiff.

Gregory J. Johnson, St. Paul, MN, for Defendant.

## ORDER

TUNEHIM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That the Defendant's Motion for Summary Judgment [Docket No. 8] is granted.

2. That Count I of the Plaintiff's Complaint is dismissed with prejudice; and Counts III, IV, and V are dismissed without prejudice.

3. That Judgment is entered accordingly.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I.  *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's Motion for Summary Judgment. A Hearing on the Motion was conducted on October 28, 1998, at which time the Plaintiff appeared by Thomas J. Lyons, Jr., Esq., and the Defendant appeared by Gregory J. Johnson, Esq.

For reasons which follow, we recommend that the Defendant's Motion be granted, and that the Plaintiff's claim pursuant to the Federal Truth in Lending Act ("TILA"), *Title 15 U.S.C. § 1601, et seq.,* be dismissed with prejudice, as barred by the TILA's one-year limitations period, and that the Court decline to exercise supplemental jurisdiction over the Plaintiff's remaining State law claims.

### II.  *Factual and Procedural History*

This is an action brought by a consumer to remedy claimed TILA and related State law violations. These asserted violations are alleged to have occurred when the Defendant sold a vehicle to the Plaintiff without accurately disclosing the finance charges that, the Plaintiff claims, concealed yield spread premiums, or kickbacks, that the Defendant retained from its brokered credit transaction. The Defendant has moved for Summary Judgment, arguing that the action was not commenced within the one-year limitations period for bringing actions pursuant to TILA. See, *Title 15 U.S.C. § 1640(e).*

On April 26, 1996, the Plaintiff, Oneika Evans ("Evans") purchased a 1990 Plymouth Laser from the Defendant, with a down payment of $1500. Her mother, Bettye Jo Evans, co-signed for the purchase. As part of the sale, Evans bought an extended service contract, to be administered by Wester Diversified Services, Inc., for an additional $900, and she bought credit life and disability insurance for a premium of $847.23.

In order to finance their purchase, Evans and her mother entered an installment contract with the Defendant, financing a total of $8354.73 for the sale price, service contract, and other fees. As financed, at an annual percentage rate of 23.25%, Evans and her mother had agreed to pay a total of $12,398.40 over a period of 42 months. None of these facts are in dispute.

Evans entered an employment relationship with Arcadia Financial on October 15, 1997. After she learned more about warranty and insurance contracts in her new position, Evans "became suspicious that [she] had received a bad deal on the Credit Life Insurance, Credit Disability Insurance and the Extended Warranty contracts." *Affidavit of Oneika Evans* ¶ 12.

She then went to the Defendant's office, and told one of its representatives that she wanted to cancel her insurance and warranty contracts. *Id.* ¶ 14. The representative wrote her name on a sheet of typing paper, listed the contracts she wanted to cancel, and wrote the word "CANCEL" on the paper. Evans signed it.

In January of 1998, Evans contacted Primus Automotive Financial Services ("Primus"), the agency that had handled the financing of the Plaintiff's vehicle, and asked if, in fact, those contracts had been terminated. The Primus representative responded that the contracts had not been rescinded. Thereafter, on March 21, 1998, Primus repossessed the Evans' Plymouth Laser.

In the meantime, Evans had contacted her attorney in February of 1998, to represent her in the unfolding contractual dispute with Primus and the Defendant. On April 15, 1998—nearly two years after the Evans and her mother negotiated the retail installment contract—and related agreements, with the Defendant, Evans filed a civil suit in Federal Court. In this suit, she alleges that the Defendant violated the TILA, "by failing to disclose the actual amount of the service contract that was actually paid to the service contract company," and by "fail[ing] to disclose the yield spread premiums." *Compl.* ¶ 24; see, *Title 15 U.S.C. § 1638(a)(2)(B)(iii)*.[1] She also alleged that the Defendant violated various Minnesota consumer protection Statutes,[2] committed common law fraud, and breached its fiduciary duties to her.

The Defendant moves for Summary Judgment, emphasizing that the sole Federal claim—under TILA—was not commenced within the time permitted for the bringing of such actions, see, *Title 15 U.S.C. § 1640(e)*, and urging that the Court not exercise supplemental jurisdiction over the remaining State law claims. See, *Title 28 U.S.C. § 1367*. Evans counters that the limitations period for her Federal claim should be equitably tolled due to the Defendant's assertedly fraudulent concealment of her Federal cause of action. However, she agrees with the Defendant that, if the Federal claim is dismissed, the remaining State law claims should be dismissed as well, in order that she may pursue them in State Court.

### III. *Discussion*

■ A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those

---

1. The Truth in Lending Act ("TILA"), *Title 15 U.S.C. § 1601, et seq.*, requires that a creditor make certain disclosures at the time of the transaction. As pertinent to the Plaintiff's claim, the Act requires that:

> In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed. Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed.

> For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:

> \* \* \*

> (iii) each amount that is or will be paid to third persons by the creditor on the consumers behalf, together with an identification of or reference to the third person \*\*\*.
> *Title 15 U.S.C. § 1638(a)(2)(B)*.

2. The Plaintiff voluntarily dismissed Count II, which alleged that the Defendant violated the Minnesota Motor Vehicle Retail Installment Sales Act, *Minnesota Statutes Section 168.72*, by not providing her a copy of the retail installment contract. See, *Stipulation of Dismissal with Prejudice* [Docket No. 17].

facts, in a light most favorable to the non-moving party, and we have found no triable issue. *Prudential Ins. Co. v. National Park Med. Center, Inc.*, 154 F.3d 812, 818 (8th Cir.1998); *Lower Brule Sioux Tribe v. State of South Dakota*, 104 F.3d 1017, 1021 (8th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon*, 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.*, supra at 256, 106 S.Ct. 2505; *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir.1998). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to [its] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, supra at 322, 106 S.Ct. 2548; see also, *Greer v. Shoop*, 141 F.3d 824, 826 (8th Cir.1998); *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir.1997). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, supra at 323,

106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross*, 992 F.2d 162, 163 (8th Cir.1993).

■ B. *Legal Analysis.* The TILA provides a Federal cause of action by borrowers against creditors who fail to make the disclosures required by its provisions. See, *Title 15 U.S.C. § 1640*. Subsection (e) confers Federal and State Court jurisdiction over such claims and, in the same provision, imposes a one-year time limitation for bringing actions, as follows:

(e) Jurisdiction of courts; limitation on actions; State attorney general enforcement

Any action under this subsection may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided.

*Title 15 U.S.C. § 1640(e).*

Since the sale, and any alleged TILA violation, occurred on April 26, 1996, and because the Complaint was filed until April 15, 1998, this action was clearly not filed within the statutory limitations period. As a consequence, the Defendant's Motion, and the Plaintiff's opposition, present two core issues. The first issue arises from the Defendant's contention that Subsection (e) circumscribes the Court's subject matter jurisdiction, thereby precluding the possibility of any equitable tolling which could revive what would appear to be a stale claim. Secondly, assuming that the limitations provision is not jurisdictional in nature, the issue becomes whether Evans has shown a triable issue of fact concern-

ing her contention that the limitations period should be equitably tolled because the Defendant, in her view, fraudulently concealed the existence of her claim.

### 1. Nature of Section 1640(e)'s Limitations Provision.

Whether the TILA's one-year limitations period limits Federal Court jurisdiction, or is subject to equitable tolling,[3] is a question of first impression within the Eighth Circuit. Not surprisingly, the two possible interpretations of the Statute are mutually exclusive, because a limitation period is not subject to equitable tolling if it is "jurisdictional" in nature. See, e.g., *Krueger v. Saiki*, 19 F.3d 1285, 1286 (8th Cir.1994), cert. denied, 513 U.S. 905, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994). Every other Circuit, which has been directly presented with the issue, has held that the limitations period of Section 1640(e) is subject to equitable tolling.[4] See, *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505 (3rd Cir.1998); *King v. California*, 784 F.2d 910, 914–15 (9th Cir.1986); *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir.1984). We believe that the Eighth Circuit would follow the reasoning of these decisions.

The Supreme Court has long maintained that principles of equitable tolling are "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Manifest congressional intent controls, however, as "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Thus, we must "examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the *** Act." *Id.*; see also, *Ellis v. General Motors Acceptance Corp.*, supra at 707 (applying *Burnett* analysis to TILA); *Ramadan v. Chase Manhattan Corp.*, supra at 501–02 (same). A well-known example of this method of statutory interpretation is that which was employed in *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), where the Supreme Court looked to the structure of Title VII of the Civil Rights Act of 1964, *Title 42 U.S.C. § 2000e, et seq.*, the policy

3. "Equitable tolling" is the doctrine under which a plaintiff may sue after the statutory time period has expired if she has been prevented from doing so due to inequitable circumstances. See, *Bailey v. Glover*, 88 U.S. [21 Wall.] 342, 347, 22 L.Ed. 636 (1874); *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 797 (8th Cir.1998), pet. for cert. filed (Oct. 29, 1998) (No. 98–709).

4. The only authority, which presents a conflicting interpretation of Title 15 U.S.C. § 1640(e), is *obiter dictum* by the Court of Appeals, for the D.C. Circuit, in *Hardin v. City Title & Escrow Co. .*, 797 F.2d 1037, 1039–40 & n. 4 (D.C.Cir.1986). There, the case did not involve the TILA, but concerned the limitations provisions of the Real Estate Settlement Procedures Act ("RESPA"), *Title 12 U.S.C. § 2601, et seq.* The Court passed on the TILA's similar limitations provision, by noting that Congress had amended the provision, in 1980, in order to provide that a recoupment defense, to collection actions, could survive the one-year limitations period, there-

by implying that Congress had considered the provision to be jurisdictional. As noted by other Courts, *Hardin*'s interpretation of the limitations provisions of both RESPA, and the TILA, is fundamentally at odds with Supreme Court authority which holds that limitations periods, in Federal statutes, are not regarded as jurisdictional unless the United States is contemplated as the defendant. See, *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ("time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling'."); see also, *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 503–504 (3rd Cir.1998) (rejecting *Hardin*'s analysis as too tenuous to overcome presumption that Federal limitations provision is not jurisdictional); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166–67 (7th Cir.1997) (declining to follow *Hardin* in RESPA case because "periods of limitations in federal statutes are * * * universally regarded as nonjurisdictional").

behind the Act, and prior case law, in order to determine whether the timely filing of a complaint with the Equal Employment Opportunity Commission was a jurisdictional prerequisite, or "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, supra at 393, 102 S.Ct. 1127. Having reviewed the same factors that were examined in *Zipes*, we conclude, as have other Courts, that the TILA's statute of limitations is subject to equitable tolling, and is not a jurisdictional prerequisite to the initiation of a claim under one of its substantive provisions.

In contrast to the timing requirement at issue in *Zipes*, the limitation period for the filing of actions under TILA is contained in the same subsection as the grant of jurisdiction, and the two concepts themselves are paired in the caption of Section 1640(e). While the heading of Subsection (e) may vaguely suggest that Congress considered jurisdiction and the limitations period unitarily, its interpretive value is minor. See, *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (headings are useful "only when they shed light on some ambiguous word or phrase."); see also, *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 1956, 141 L.Ed.2d 215 (1998). Nor do we find the fact, that the limitation provision and the grant of jurisdiction are in the same subsection, to be determinative of Congress's intent. The Supreme Court has addressed this suggestion by noting that "the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled." *Burnett v. New York Central R.R. Co.*, supra at 427 n. 2, 85 S.Ct. 1050; see also, *Ramadan v. Chase Manhattan Corp.*, supra at 502–03. We must, therefore, look beyond the ere juxtaposition of the right to a Federal forum, and the limitation on the availability of that remedy, in order to determine whether the limitation is jurisdictional.

■ The text of the TILA makes plain that its underlying purpose is "to assure meaningful disclosure of credit terms * * * and to protect the consumer against inaccurate and unfair" credit practices. *Title 15 U.S.C. § 1601(a)*. It was conceived "to promote full disclosure of the cost of consumer credit so that buyers could make informed choices in their credit transactions." *Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 46 (8th Cir. 1977). It was also enacted "to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices." *Ramadan v. Chase Manhattan Corp.*, supra at 502.

We agree with those Courts which have concluded that, to apply a one-year limitations period strictly, as defining the Court's subject matter jurisdiction, would directly contravene the TILA's purpose of protecting consumers against fraudulent credit practices. As the Eleventh Circuit Court of Appeals explained:

> [I]f we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy.

*Ellis v. General Motors Acceptance Corp.*, supra at 708.

Put simply, it would border on perverse for us to hold that a consumer's opportunity to file suit, under what is in large part an antifraud statute, would not be preserved by the doctrine of fraudulent concealment—a doctrine that is directed at the same class of turpitude. Where, as here, the underlying purpose of the TILA would be thwarted by a unbending applica-

tion of the one-year period prescribed by Section 1640 in which to commence suit, and in the absence of any manifest showing that Congress intended the limitations period to be jurisdictional, we agree with the Third, Sixth, Ninth, and Eleventh Circuits, that the limitations period is subject to the general rule of equitable tolling.

■■■ 2. *Fraudulent Concealment.* As we have noted, Section 1640(e) provides that an action to redress an alleged violation of the TILA must be commenced "within one year from the date of the occurrence of the violation." With respect to a closed-ended transaction such as this one, *a fortiori,* a TILA claim accrues "when credit is extended through the consummation of the transaction between the creditor and its customer without the required disclosures being made." *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 646 (8th Cir.1980). If applicable, the doctrine of fraudulent concealment could equitably toll the limitations period of Section 1640(e), such that the period would begin to run, not at the time that the credit transaction was consummated, but "from the date on which the borrower discovers or has a reasonable opportunity to discover the fraud involving the complained of TILA violation." *Jones v. TransOhio Sav. Ass'n,* supra at 1043; see also, *King v. California,* supra at 915.

■■■■ For the Federal common law doctrine of fraudulent concealment to apply, the Plaintiff must show: 1) that the Defendant engaged in a course of conduct to conceal evidence of the Defendant's alleged wrongdoing; and 2) that the Plaintiff failed to discover the facts giving rise to her claim despite her exercise of due diligence. See, *Schaefer v. Arkansas Medical Soc.,* 853 F.2d 1487, 1491–92 (8th Cir. 1988) (applying standard to claim under Employee Retirement Income Security Act); *In re Potash Antitrust Litigation,* 159 F.R.D. 682, 698 (D.Minn.1995) (Federal antitrust claim); *Jones v. Saxon Mortgage, Inc.,* 980 F.Supp. 842, 846 (E.D.Va. 1997) (TILA claim). The Courts, which

have applied the doctrine of fraudulent concealment to TILA claims that are directed at alleged nondisclosures, have uniformly held that fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled. See, e.g., *Jones v. Saxon Mortgage, Inc.,* supra at 846; *Kicken v. Valentine Production Credit Ass'n,* 628 F.Supp. 1008, 1011 (D.Neb.1984), aff'd, 754 F.2d 378 (8th Cir.1984) (table decision); *Hughes v. Cardinal Federal Sav. & Loan Ass'n,* 566 F.Supp. 834, 838 (S.D.Ohio 1983); see also, *Ripplinger v. Amoco Oil Co.,* 916 F.2d 441, 442 (8th Cir.1990) ("[F]raudulent concealment *** requires an act of affirmative misrepresentation over and above the acts creating the alleged cause of action"). To hold that the Defendant's failure to make the disclosures required by TILA was, in and of itself, an act of fraudulent concealment, would effectively nullify the one-year limitations period that was enacted by Congress, as virtually every late-filed TILA claim could, under such an interpretation, elude the application of the limitations provision through a claimed equitable tolling. See, *Hughes v. Cardinal Federal Sav. & Loan Ass'n,* supra at 838.

■■■ Evans states that the Defendant took several actions, apart from the asserted violations of the TILA, that were intended to conceal her cause of action under the Statute. First, Evans' mother avers that, at the time of the transaction, the Defendant's sales representative told her that Evans "was required to purchase the Credit Life Insurance and Credit Disability Insurance in order to obtain credit to purchase the Laser." *Affidavit of Bettye Jo Evans* ¶ 4. It bears mention, however, that immediately above the Plaintiff's signature, which recorded her agreement to purchase the referenced insurance, was the typed statement: **"CREDIT LIFE, CREDIT DISABILITY AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE**

**PREMIUM.**" *Minnesota Vehicle Retail Installment Contract, Affidavit of David W. Walker, Ex.* A [emphasis in original]. Even assuming—although it is not alleged—that, notwithstanding the clear contractual language to the contrary, Evans somehow relied upon the salesman's alleged comment to her mother, it defies logic to conclude that informing Evans, that life and disability insurance were necessary to the credit transaction, was somehow intended, or actually operated, to prevent her from discovering the Defendant's claimed failure to disclose the actual amounts paid to the service contract company, or retained as yield spread premiums. There is no evidence that the representative's alleged statement concealed anything that was not plainly written on the face of the contract—that credit life and disability insurance were not required in order to obtain an extension of credit.

According to Evans, the next act of the Defendant, which is said to have fraudulently concealed her action against the Defendant, did not occur until, at least, October of 1997, when she attempted to cancel her insurance and warranty contracts, and then reoccurred in February of 1998, when the Plaintiff was purportedly given "the runaround." Whatever their effect upon Evans' discovery of her cause of action, these actions occurred long after the limitations period had passed and, standing alone, they are wholly irrelevant to the issue of tolling. See, *Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (time-barring TILA claims which accrued more than one year before fraudulently concealing conduct). Simply stated,

at the time of those purported acts, there was no limitations period to toll.

Moreover, Evans has not shown that she exercised due diligence in trying to uncover the facts that were allegedly concealed, as she took no action to verify the amounts stated in her installment contract for approximately 18 months after the credit transaction. See, *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C.Cir. 1996) (plaintiff must establish that she used due diligence). As there are no facts that would suggest that an action, on the Defendant's part, and that occurred within the limitations period, somehow prevented, or was intended to prevent, the Plaintiff from learning of the claimed violations of the TILA, we find that the Plaintiff has failed to demonstrate circumstances that would invoke equitable tolling of the TILA's one-year limitations period.[5] Stated otherwise, the Plaintiff has failed to raise a genuine issue of material fact on her equitable tolling claim and, therefnore, we recommend that Summary Judgment be granted i favor of the Defendant, and that Count I be dismissed, with prejudice.

3. *Pendent State Law Claims.* This Court's original jurisdiction was based exclusively upon the Federal question which was presented by the TILA issue. See, *Title 28 U.S.C. § 1331; Title 15 U.S.C. § 1601, et seq.* Title 28 U.S.C. § 1367(a) provides that District Courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of

---

5. In addition, the Plaintiff has failed to plead the circumstances, which are purported to constitute fraudulent concealment, with the particularity that is required by Rule 9(b), Federal Rules of Civil Procedure. See, *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 800 (D.Md.1998) (applying Rule 9(b) to fraudulent concealment allegation, directed at circumventing TILA's limitations provision); *Butler v. Rye*, 544 F.Supp. 143, 146 (W.D.Mo. 1982) (in TILA action, claim of fraudulent concealment to toll Section 1640(e) must be pleaded according to the requirements of

Rule 9(b)); see also, e.g., *J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir.1996) (plaintiff seeking to invoke doctrine of fraudulent concealment must plead with particularity circumstances of fraudulent concealment), cert. denied, 519 U.S. 823, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996). The Complaint is devoid of the factual allegations that are now proffered, by way of Affidavit, in an unsuccessful effort to create an issue of fact on the question of fraudulent concealment.

the same case or controversy under Article III of the United States Constitution." Where, as here, all of the claims which fall within our original jurisdiction have been dismissed, the Court may decline to exercise supplemental jurisdiction over pendent state law claims. *Title 28 U.S.C. § 1367(c).* In deciding whether to exercise supplemental jurisdiction after we have dismissed the only claims arising under our original jurisdiction, we are obliged to consider "the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,* 5 F.Supp.2d 694, 711 (D.Minn.1998), citing *Marshall v. Green Giant Co.,* 942 F.2d 539, 549 (8th Cir.1991). Courts should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990). Ordinarily, " 'where all federal law claims are eliminated before trial, the balance of factors to be considered' will weigh against the exercise of supplemental jurisdiction." *Edwards v. Widnall,* 17 F.Supp.2d 1038, 1043 (D.Minn.1998), quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

▮▮▮▮. None of the pertinent factors persuade us to retain jurisdiction over the three remaining pendent State law claims. Having been commenced in April of 1998, this litigation is still comparatively undeveloped, and discovery is not scheduled to conclude until July of 1999. Not surprisingly, the Defendant's Motion for Summary Judgment on the State law claims is based entirely on its request that supplemental jurisdiction not be exercised. Evans has echoed this request, preferring a State forum for her claims under the laws of Minnesota; that is, in the event that her single Federal claim should be dismissed. Although the remaining claims are not in areas of unsettled State law, judicial restraint counsels against resolving them where both parties have expressed a preference for a State forum, and where it appears that little of the parties', or the Court's, resources have already been devoted to their merits. Pursuant to Section 1367(c), we recommend that the Plaintiff's State law claims in Counts III, IV, and V, be dismissed, without prejudice.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion for Summary Judgment [Docket No. 8] be granted.

2. That Count I of the Plaintiff's Complaint be dismissed with prejudice; and Counts III, IV, and V be dismissed without prejudice.

3. That Judgment be entered accordingly.