Bertrum KELLEY

v.

GALVESTON AUTOPLEX d/b/a
Sand Dollar Autoplex.

No. Civ.A. G–99–451.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 29, 2000.

Ted C. Litton, Royston, Rayzor, Vickery and Williams, Houston, TX, for Ted L. Litton, mediator.

Joseph Michael Gourrier, Houston, TX, for plaintiff.

William T. Green, III, Houston, TX, for defendant.

### ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION

KENT, District Judge.

In this action, filed March 30, 1999, Plaintiff asserts, inter alia, violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA") and the Rules of the Federal Reserve Board, 12 C.F.R. § 226.1, et seq. (Regulation Z), violations of the Texas Deceptive Trade Practices Act., TEX.BUS. & COM. CODE § 17.41, et seq. ("DTPA"), and common law fraud. Now before the Court is Plaintiff's Amended Motion for Class Certification. For the reasons set forth below, Plaintiff's Amended Motion for Class Certification is **DENIED**.

### I. BACKGROUND

Plaintiff Bertrum Kelley purchased a used 1994 Dodge Intrepid, for his personal use, from Sand Dollar Autoplex on March 20, 1998. Sand Dollar financed the purchase with a retail installment contract, which obligated Kelley to pay Sand Dollar the total purchase price of $15,072.96,[1] including a finance charge of $3,472.82. The purchase price also included a $1,500 service contract charge, a $140.10 charge for credit life insurance, and a $416.43 charge for accident and health insurance. In a section of the contract entitled "Itemization of Amount Financed," Sand Dollar represented that the $1,500 service charge would be paid to Precision Care, a third party warranty company.

The second page of the contract contains the following boiler plate language: "You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back as commission or other remuneration." The first page of the contract, however, states: "We are retaining a portion of the items marked above with an asterisk." No asterisk appears anywhere on the contract.

Plaintiff brings against Defendant Sand Dollar a claim under TILA and Regulation Z, a claim under the Motor Vehicle Information and Cost Savings Act, a claim under the DTPA, a claim for common law fraud, and a claim for breach of fiduciary duty. Plaintiff seeks class certification only on the TILA and Regulation Z claims, the DTPA claim, and the common law fraud claim. With re-

---

1. In its amended answer, Defendant denies that this figure represents the total purchase price, but gives no reasons why. A copy of the contract, which is attached to the Defendant's Response to the Motion for Class Certification, appears to indicate that this figure represents the amount of the purchase price.

gard to the TILA and Regulation Z claims, Plaintiff alleges that (1) Defendant retained, in violation of TILA and Regulation Z, portions of an optional insurance charge while falsely representing that the entire amount was being paid to a third party (an "upcharge" in the financial parlance), (2) Defendant failed, in violation of TILA and Regulation Z, to identify third parties and payments to third parties, and (3) Defendant charged, also in violation of TILA and Regulation Z, consumers who financed their purchase of service contracts more than consumers who paid cash (an undisclosed finance charge). According to Plaintiff, Sand Dollar retained, without disclosure, $555.00 of the $1,500 it was to pay to Precision Care, $49.04 of his credit life insurance premium, and $145.75 of the health insurance premiums. The DPTA claim alleges the use of false, unfair, and/or deceptive practices in the sale of a used motor vehicle. The fraud claim alleges false representation in connection with a sale of a motor vehicle.

In addition, Plaintiff alleges that Defendant has a regular business practice of engaging in these violations, unfair practices, and fraudulent conduct. Thus, in prosecution of its claim, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), Plaintiff seeks to certify a class based on the TILA and Regulation Z claims, the DPTA claim, and common law fraud claim. The proposed class consists of all persons who satisfy the following criteria:

a. They signed a retail installment contract to purchase a motor vehicle from Sand Dollar;

b. The retail installment contract contained charges for optional insurance, including service contracts, credit life insurance and/or accident & health insurance;

c. The optional insurance charge was included in the "amount financed" category on the retail installment contract; and

d. The retail installment contract contained inaccurate disclosures because of the failure to identify third parties, failure to identify amounts paid to third parties, and/or failure to identify amounts retained by Sand Dollar.

According to the Plaintiff, its proposed class would contain approximately 2,000 consumers who purchased optional insurance coverage between January 1, 1996 and April 30, 2000.

## II. STANDARD FOR CLASS CERTIFICATION

■ The party seeking class certification has the burden of showing that the requirements for a class action have been met. *See, e.g., Applewhite v. Reichhold Chem., Inc.,* 67 F.3d 571, 573 (5th Cir.1995); *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. Unit A 1981). Under Rule 23(a), the following four prerequisites must be met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, Plaintiff must satisfy one of the elements of Rule 23(b). Here, Plaintiff seeks to certify a class under Rule 23(b)(3), which requires that the Court find both that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Zeidman,* 651 F.2d at 1033. District Courts have wide discretion in deciding the issue of certification, and the standard for review is abuse of discretion. *See id.; Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 471–72 (5th Cir. 1986). However, a District Court is required to conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996); *Applewhite,* 67 F.3d at 573.

In the instant case, Defendant claims that Plaintiff may not serve as class representative because he is not a member of the class

he seeks to represent. In addition, Defendant contests the class certification requirements of numerosity, commonality, typicality, and adequacy of representation. The Court finds that Plaintiff could serve as class representative for the proposed class but is persuaded by Defendant's argument that Plaintiff has not carried his burden of demonstrating commonality, typicality, and adequacy of representation for all claims for which Plaintiff seeks class certification. Moreover, the Court finds that even if the Plaintiff had met these requirement, the Plaintiff could not show predominance of common questions or superiority of the class action as a means of adjudication. Consequently, Plaintiff's Motion for Class Certification is **DENIED.**

### III. ANALYSIS

#### A. Class Membership

As a preliminary matter, the Court considers Defendant's contention that Plaintiff is not a member of the proposed class. A basic requirement for maintaining a class action is that the "named representative party is a member of the class he purports to represent." 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1761 (1986). The Defendant claims that Plaintiff does not meet this requirement because Plaintiff's retail installment contract does in fact contain the required disclosure language. The contract contains boilerplate disclosure language on the second page. Toward the bottom of first page of the contract, however, is the statement "We are retaining a portion of the items marked above with an asterisk." Whether the language on the front of the contract is inconsistent with the boilerplate language on the second page, thereby making the disclosure invalid is a question properly addressed in a motion for summary judgment or at trial, not at the class certification stage. The Court may not consider the merits of Plaintiff's case in ruling on class certification. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Therefore, there is no reason to suspect that Plaintiff's

claim, as alleged, does not fall within the class definition.

#### B. Rule 23(a) Prerequisites

#### 1. Numerosity

The first prerequisite to a class action under Rule 23(a) is that "the class is so numerous that joinder of all members of the class is impractical." There is no threshold size for a class action, and the issue of numerosity must be determined on a case by case basis. *See* Wright et al., *supra* § 1762. The burden of showing impracticability rests with the class representative seeking certification. The class representative need not determine exactly how many members the class will contain, but on the other hand, should not engage in mere speculation as to the size of a class. *See Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *Anderson v. Department of Pub. Welfare,* 1 F.Supp.2d 456, 460 (E.D.Pa.1998). The Court generally errs on the side of finding numerosity as the Court can decertify a class at any time. See *Leszczynski v. Allianz Ins.,* 176 F.R.D. 659, 670 (S.D.Fla.1997).

After conducting class discovery, Plaintiff claims that approximately 2,200 persons purchased optional insurance from Sand Dollar between January 1, 1996 and April 30, 2000. Attached to Plaintiff's Memorandum of Law in Support of Class Certification are three exhibits. The exhibits contain the names of approximately 120 customers who allegedly did not receive the required disclosures under the TILA and Regulation Z. In addition, Plaintiffs have included copies of the various contracts of these customers.

*TILA and Regulation Z Claims*

With regard to the TILA and Regulation Z claims, Plaintiff has met its burden of proving numerosity. A single action joining 2,200 plaintiffs would be unmanageable. Thus joinder is impracticable, and a class action would be preferable.

In response, Defendant argues that many of the potential class members fall within "a time period of uncertainty" in the law and are hence susceptible to a good faith de-

fense.[2] However, the Court may not consider the merits of such a defense in deciding whether a class should be certified. *See Eisen,* 417 U.S. at 177, 94 S.Ct. 2140. To discount such potential class members on the basis of such a defense would require the Court to rule on the merits.

*DPTA and Fraud Claims*

With regard to the DPTA and fraud claims, there is no "good faith defense" at issue. Defendant has not even contested numerosity as regards these claims.

### 2. Commonality

The second prerequisite to a class action under rule 23(a) is that "there are questions of law or fact common to the class." The test is not demanding and only requires that "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000). *Accord Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997); *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). *But see Applewhite,* 67 F.3d at 573 (holding that the class must have two issues in common). A common question is defined as "one which when answered as to one class member, is answered to all of them." *Shaw v. Toshiba America Info. Sys., Inc.,* 91 F.Supp.2d 942, 954 (E.D.Tex.2000) (citing *Forbush* ).

 Plaintiff argues that the common issues are: "A) whether the class members' retail installment contracts contain the TILA disclosure violations ... B) whether the disclosure violations alleged herein are false, misleading and/or deceptive in violation of

the DTPA, and C) whether the disclosure violations alleged herein constitute common law fraud." (Plaintiff's Memo. of Law in Support at 7). Plaintiff has merely restated the three causes of action as the common issues. If Courts were to address the commonality issue at this level of generality, the requirement would be met every time. Instead, a Court must look at more particular factual and legal issues.

In this case, because the alleged violations took many different forms, there is no common issue of law or fact. This is not a case involving "a single type of contract that is virtually, if not completely, identical in each transaction," *Durrett v. John Deere Co.,* 150 F.R.D. 555, 557 (N.D.Tex.1993), or one involving a particular product model that malfunctions, as in *Shaw,* 91 F.Supp.2d at 942 (involving allegedly defective computers). The contracts that Sand Dollar used varied among the customers. Some allegedly contained no disclosure language, while others, including that of the named Plaintiff, contained the disclosure language but omitted asterisks. Answering the question regarding disclosure as to one Plaintiff would not answer the question as to all or even close to all the class members. The factual and legal issues involved vary from claim to claim. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir.1998) (finding commonality lacking in a breach of contract class action because of variations among franchise contracts used from plaintiff to plaintiff). Thus, the commonality requirement is not met.

### 3. Typicality

 The third prerequisite to a class action under rule 23(a) is that "The claims or defenses of the representative parties are

---

**2.** According to the Defendant, a Federal Reserve proposed staff interpretation of December 7, 1995 provided that motor vehicle dealers could list the total amount paid for a service contract without disclosing any retention. *See* 60 Fed. Reg. 62764, 62765, 62769 (1995). Then on April 4, 1996, the Board implemented a more restrictive interpretation. *See* 61 Fed.Reg. 14952, 14956 (1996). Thereafter, a split emerged in the district courts over whether a dealer was required to disclose a commission. The dispute

was settled by the Seventh Circuit Court of Appeals on April 23, 1997. *See Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283 (7th Cir.1997). Thus, Defendant's claimed "period of uncertainty" occurred between December 7, 1995 and April 23, 1997. After April 23, 1997, dealers changed their contracts to provide more disclosures. Plaintiff Kelley's contract was executed after this date and contained the required disclosures. As mentioned before, the alleged violation related to Kelley's contract regards the omission of an asterisk.

typical of the claims and defenses of the class." Like the commonality requirement, the threshold for typicality is not high. *See Mullen,* 186 F.3d at 625. The Court's inquiry focuses on "the similarity between the named Plaintiff's legal and remedial theories and the theories of those whom they purport to represent." *Id.; accord Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir.1986). The typicality prerequisite, like the adequacy prerequisite, ensures that the class plaintiff will advance the interest of absent class members. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (noting that typicality serves as a guidepost for determining "whether the named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"). One chief purpose of the typicality requirement is to prevent representation of a class by a representative who is "preoccupied with a defense which is applicable only to himself." *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 747 (5th Cir.1984). The concern is that "the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that representation of the rest of the class will suffer." *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.,* 628 F.2d 994, 999 (7th Cir.1980).

Plaintiff has not demonstrated that his claim is typical of the claims of the class. As mentioned earlier, Plaintiff's contract did contain the required disclosure language. Plaintiff's claim is based on the failure of Sand Dollar to place an asterisk indicating that certain commissions might be retained by Sand Dollar. Of the 2,000 potential class members, Plaintiff has only identified one other person whose lack of disclosure stems from an omitted asterisk. Thus it is highly likely that Plaintiff will be preoccupied with a defense applicable to himself and perhaps only a handful of other class members.

Furthermore, Defendant maintains that there is a good faith defense based on conflicting interpretations of TILA and Regulation Z from December 7, 1995 and April 23, 1997. Without deciding the merits of such a defense, the Court notes that Mr. Kelley's contract was executed in 1998 and hence would not be subject to such a defense. Nevertheless, many of the class members' claims do fall within this time period. If the Court were to certify the class, Plaintiff Kelley would be forced to argue against a defense potentially applicable to many absent class members but not applicable to his own claim. As such, his claims and defenses are not typical of the class as a whole. *See Muller v. Curtis Pub. Co.,* 57 F.R.D. 532, 536 (E.D.Pa.1973) (holding that the named plaintiff's claim was atypical because he was not subject to a defense applicable to other members of the class). *See also Shirley Swoope v. BellSouth Telecomm., Inc.,* 1998 WL 433952, * 2 (N.D.Miss. June 23, 1998) (holding that because none of the named plaintiffs had signed releases, whereas most of the proposed class had, the named plaintiff's claim was atypical). Therefore, the Court is reluctant to certify the class because Plaintiff Kelley's claims are not typical of the claims of the class members.

### 4. Adequate Representation

The fourth prerequisite to a class action under rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class." The test focuses upon the adequacy of both the class representative and the class counsel. *See* Wright et al., *supra* § 1765. Plaintiff has not met his burden of showing that he will fairly and adequately protect class interests. *See id.* at § 1766.

As mentioned in the discussion of typicality, the Court doubts whether Plaintiff can adequately represent the class when he is subject to defenses not applicable to other class members and not subject to defenses applicable to other class members. In this way, the typicality and adequate representation requirements merge. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

The adequacy of class counsel, on the other hand, presents no problem for the Court. The Court is fully confident that Plaintiff's counsel could competently prosecute a class action of this scope and nature. The Court notes that Plaintiff's counsel is articulate, intelligent, and well organized. Despite Defendant's observation that Plaintiff's counsel

is a law school graduate of relatively recent vintage, the Court feels that youthful vigor can be an asset in the prosecution of a class action. Furthermore, this proposed class is not so large, unwieldy, or complex as to require for its litigation a lawyer of many years experience in these matters, and according to Plaintiff, he has retained additional counsel experienced in handling commercial class actions. Such a case would be a good one for a young lawyer to cut his teeth on under the tutelage of more experienced counsel were it not plagued by other difficulties that prevent the Court from certifying the class.

### C. Rule 23(b)(3) Requirements

In addition to meeting the prerequisites listed in Rule 23(a), the Plaintiff must meet at least one of the requirements of Rule 23(b). In this case, the Plaintiff has invoked Rule 23(b)(3) which allows a District Court to maintain a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Factors for the Court to consider include "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficul-

ties likely to be encountered in the management of a class action."

The Defendant has not objected to predominance or superiority, except indirectly by denying that common issues exist. Absent common issues of fact or law, it is hardly possible for common factual or legal issue to predominate, or for the class action device to be the superior method of adjudication.

Yet, even if there were common issues of fact or law present, the Court would not certify the class because individual issues eclipse any hypothetical common issues. *Cf. Castano*, 84 F.3d at 741 (holding that state law variations in a multi-state class action swamp any common issues and defeat predominance).

*TILA and Regulation Z Claim*

The TILA and Regulation Z claims involve individualized issues concerning the statute of limitations that would overshadow any potential common issues. Without ruling on the issue, the Court notes that many potential class members, including the named Plaintiff himself, appear to be time-barred under TILA and Regulation Z.[3] Claims under TILA and Regulation Z have a one year statute of limitations. *See* 15 U.S.C. § 1640(e). Plaintiff filed his complaint on March 30, 1999, more than one year after the contract was entered into on March 20, 1998. Furthermore, of the 120 class members that Plaintiff lists in his exhibit, the majority have contracts executed more than one year before the date of filing. In defense, Plaintiff responds that the claims should be equitably tolled. Whether or not such claims are susceptible to equitable tolling,[4] the equitable

---

**3.** In the case of the named Plaintiff himself, this is particularly important because if a sole class representative is time barred, he cannot represent a class. *See Weinberger v. Retail Credit Co.*, 498 F.2d 552, 556 (4th Cir.1974) (holding that because Plaintiff's claim was time barred, he was not a member of the class he sought to represent); *Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir.1997) (holding that a Plaintiff was not a class member, and hence could not represent the class because his claim was time barred); *Mason v. Anheuser–Busch, Inc.*, 579 F.Supp. 871, 873 n. 1 (E.D.Mo.1984). The Court, however, cannot refuse to certify the class on this account because ruling on statute of limitations constitutes reaching the merits and such is forbidden in the con-

text of a motion for class certification. *See Eisen*, 417 U.S. at 177, 94 S.Ct. 2140; *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 80 (E.D.Pa. 1987) (holding that a statute of limitations defense goes to the merits and hence is not an appropriate objection in the context of class certification). Had the Defendant filed a Motion to Dismiss on the basis of limitations and the Court ruled in favor of it, then perhaps the issue could serve as basis for denying class certification.

**4.** Although the Fifth Circuit Court of Appeals has not considered the precise issue, every Circuit Court ruling on the issue has held that the period of limitations under the TILA, being non-jurisdictional, is subject to equitable tolling. *See Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505

tolling defense, in this case, requires an individualized inquiry of a type not appropriate in the class action setting.

■ The doctrine of equitable tolling allows a Court to toll the statute of limitations when the Plaintiff has been prevented from filing within the limitations period by some inequitable conduct by the Defendant. *See Ellis,* 160 F.3d at 706. In general, the doctrine of equitable tolling is to be applied sparingly. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); *Jones v. Saxon Mortgage, Inc.,* 980 F.Supp. 842, 846 (E.D.Va.1997), *aff'd* 161 F.3d 2, 1998 WL 614150 (4th Cir.1998) (citing *Irwin* in the context of a TILA case). In order for the doctrine of equitable tolling to be applied in a TILA action, the Plaintiff must show that his creditor fraudulently concealed the violation. *See Rowland v. Novus Fin. Corp.,* 949 F.Supp. 1447, 1454 (D.Haw.1996). Furthermore, in TILA cases based on nondisclosure, "fraudulent conduct, beyond the nondisclosure itself, is necessary to permit the one-year period to be equitably tolled." *Evans v. Rudy–Luther Toyota, Inc.,* 39 F.Supp.2d 1177, 1184 (D.Minn.1999). *Accord Jones,* 980 F.Supp. at 846; *Kicken v. Valentine Prod. Credit Ass'n,* 628 F.Supp. 1008, 1011 (D.Neb. 1984), *aff'd* 754 F.2d 378 (8th Cir.1984); *Hughes v. Cardinal Fed. Sav. & Loan Ass'n,* 566 F.Supp. 834, 838 (S.D.Ohio 1983). Determining whether there was fraudulent concealment above and beyond the initial nondisclosure requires an inquiry into the circumstances of each case.[5] *See Broussard,* 155 F.3d at 342 (holding that the equitable tolling a statute of limitations depends on an individualized showing). The class action is an inappropriate vehicle for such determinations.

*The DTPA and Common Law Fraud Claims*

■ Furthermore, individual questions regarding the DTPA and fraud claims would overwhelm any common questions. Plaintiff Bertrum Kelley's DTPA claim consists predominately of claims arising out of his particular circumstance. For example, he claims that Sand Dollar misrepresented that it had good title to the vehicle it sold to Mr. Kelley, and that the service contract would cover repairs to the vehicle's transmission and transmission cooling line.

■ The common law fraud claim involves issues of individual reliance and as such is not appropriate for class treatment. Despite Plaintiff's argument to the contrary, reliance is an element of common law fraud under Texas law even in cases based on nondisclosure. *See Schlumberger Tech. Co. v. Swanson,* 959 S.W.2d 171, 181 (Tex.1997) ("Reliance is an element of fraud. Fraud by non-disclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentations of fact."). Thus, because reliance is an issue, the predominance and superiority requirements would not be met even if there were common issues of fact or law. *See Castano,* 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue."); *Young v. Nationwide Life Ins. Co.,* 183 F.R.D. 502, 508 (S.D.Tex.1998) (Kent, J.) (quoting *Castano*).

## IV. Conclusion

For the reasons set forth above, Plaintiff's Amended Motion for Class Certification is **DENIED.** All parties should prepare a proposed discovery and trial schedule to be discussed at the status conference. The Court strongly urges the parties to earnestly consider possibilities for settlement of these claims.

**IT IS SO ORDERED.**

---

(3rd Cir.1998); *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1041 (6th Cir.1984); *King v. California,* 784 F.2d 910, 914–15 (9th Cir.1986); *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 708 (11th Cir.1998). *But see Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1039 n. 4 (D.C.Cir.1986) (indicating in dicta that TILA claims should not be subject to equitable tolling).

5. For example, the named Plaintiff's only basis for fraudulent concealment is that he was allegedly not given a copy of his retail installment contract at the time of sale.