# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00396-CV

---

**National Western Life Insurance Company, Appellant**

**v.**

**Ella Mae Rowe, Individually And On Behalf Of All Others Similarly Situated, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. GN000704, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

---

National Western Life Insurance Co. (ANational@) brings this interlocutory appeal challenging the trial court=s order certifying a class action. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (West Supp. 2002). National contends that the trial court abused its discretion in certifying the class because the appellee, Ella Mae Rowe, failed to satisfy certain requirements for class certification under rule 42 of the Texas Rules of Civil Procedure. We will affirm the trial court=s order certifying the class.

## BACKGROUND

This case concerns child riders to life insurance policies sold by National. National began selling child riders in 1965. Rowe purchased her life insurance policy with a child rider from National in

1977.  Since National began selling these riders, the forms of the child riders have been altered.[1]  However, all forms of the rider that lie at the center of this controversy contain substantially similar language.  Each rider provides for a $1,000 benefit to be paid upon the death of a child prior to termination of coverage for that child at age twenty-five.  The rider defines Achild@ as follows:

> AChild@ as used in this rider means (1) each of the Insured=s children who is named in the application for this rider, who is at least 15 days old, and who at the date of application is not yet 18 years old, and (2) each child born to or legally adopted by the Insured and Insured=s spouse after the date of application for this rider, who becomes 15 days old and who at the date of adoption is not yet 18 years old.

National does not maintain records of the insured=s children and does not require notice upon the birth or adoption of additional children after the child rider is purchased.  National simply promises to provide the $1,000 benefit upon receipt of Adue proof of death of a child.@

The rider also contains the following language concerning termination of coverage:

> Insurance on a Child stops on the rider anniversary when the Child is 25 years old unless it stops earlier in accordance with this section.

---

[1]  The order certifying the class lists a total of thirteen different rider forms that were issued since 1965.  Those form numbers are 01-3014, 01-3014A, 01-3014R, 01-3014 (Rev. 5/89), 01-3014RM (Rev. 5/89), 01-3014R-MO, 01-3024, 01-3024A, 01-3024R, 01-3024R-MO, 01-3029R-MO, 01-3029, and 01-3029A.

Premiums are not due for this rider after it has stopped. If we accept a premium after termination it does not mean that we are liable for benefits under this rider or that we waive the termination. We will refund any premiums so accepted.

National drafted these riders so that coverage terminates once the policyholder=s children have reached twenty-five years of age. However, because National recognized that it may continue to receive rider premiums after coverage terminates, the rider disclaims liability for benefits if premiums are received and accepted after coverage terminates. Although the rider promises a refund of premiums so accepted, National has not offered to refund the premiums collected from unnamed class members that were remitted after coverage terminated.[2] It is National=s failure to refund premiums paid after a child turns twenty-five that forms the basis for this class action litigation.

The termination language in the rider lies at the heart of this dispute. Rowe alleges that National has wrongfully continued to collect premiums for riders under which the coverage has terminated. Policyholders do not receive a copy of the rider until after the first premium payment is received by National. Therefore, policyholders have already initiated payment for the rider before having the opportunity to review the contractual language to which they have agreed. Furthermore, Rowe claims that National designed that language to place an affirmative duty on the policyholder to recognize when the rider has expired. Rowe claims that National designed the riders in this manner with an understanding that

---

[2] National did offer to refund the premiums that Ella Mae Rowe has paid since her rider=s coverage has terminated, but she refused.

3

individuals would not recognize the nuances of this language, and thus, would likely continue to pay premiums for riders that had terminated.

Additionally, Rowe argues that National is in the best position to monitor its policyholders= rider coverage and should assume the obligation of notifying policyholders if they remit premiums that are no longer due. Rowe further contends that National=s billing policies confuse policyholders and manipulate them into paying for terminated riders, in that National submits premium invoices to policyholders that fail to segregate the two premiums, one for the underlying policy and one for the rider. National concedes that on policies that are in effect for ten or twenty years, policyholders may forget that their premiums include payments for the rider. Rowe argues that National should notify its policyholders about the status and charges concerning the riders. Therefore, Rowe filed suit in March 2000 asserting claims against National for breach of contract, fraud, negligent misrepresentation, unjust enrichment, and violations of the Deceptive Trade Practices-Consumer Protection Act and article 21.21 of the Texas Insurance Code. *See* Tex. Bus. & Com. Code Ann. ' 17.41 (West 2002); Tex. Ins. Code Ann. art. 21.21 (West Supp. 2002).

National responds that it should not be responsible for notifying policyholders when coverage terminates on the rider because National has no way of knowing the ages of children covered by the rider. National does not maintain records of the names and ages of its policyholders= children. Nor does National require notice if additional children come under the rider=s umbrella of coverage. Because National does not maintain such records, National claims that it cannot be expected to know the number or ages of covered children. National=s second defense to Rowe=s allegations is that the riders are designed to provide continuing coverage regardless of whether policyholders have children under twenty-five when

4

premiums are paid. National argues that some policyholders choose to continue paying for the rider to ensure that any after-born or after-adopted children are covered. National asserts, *inter alia*, that the class certification is improper because the trial court ignored National=s argument based on this continuing benefit.

National raises eight issues in its appeal. In its first issue, National attacks the trial plan on grounds that it relies on a flawed claim form procedure and it eliminates or lowers Rowe=s burden of proof concerning reliance and National=s statute of limitations defense. In its fifth and sixth issues, National also challenges the trial plan as arbitrarily placing Rowe=s breach of contract claims ahead of the remaining tort claims and failing to consider a section of the insurance code. *See* Tex. Ins. Code Ann. ' 36.159(c) (West 2002) (governing Texas Department of Insurance subpoena powers and duty to protect confidentiality of privileged records). National=s second issue challenges the trial court=s finding that the class met the commonality requirement of rule 42(a)(2). Issues three and four challenge the trial court=s determination that Texas law governs all the claims of the class. By its seventh issue, National asserts that the trial court abused its discretion in admitting expert testimony in the certification hearing without properly examining it for relevance and reliability. Finally, National=s eighth issue challenges the trial court=s order requiring National to bear a portion of the discovery costs in this case.

**STANDARD OF REVIEW**

In a class action, the trial court is charged with the duty of actively policing the proceedings and guarding the class interests. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1995) (discussing extraordinary nature of class action litigation, protections required for absent class members, and trial court=s departure from ordinarily detached role assumed in most other proceedings).

5

Therefore, the trial court is afforded broad discretion in defining the class and determining whether to grant or deny a class certification. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 406 (Tex. 2000). On appeal, our review is strictly limited to determining whether the trial court abused its discretion in ordering class certification. *See Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 740 (Tex. App.▬Austin 1998, no pet.); *Vinson v. Texas Commerce Bank-Houston, N.A.*, 880 S.W.2d 820, 823 (Tex. App.▬Dallas 1994, no writ). An appellate court must not substitute its judgment for that of the trial court. *Tana Oil*, 978 S.W.2d at 740. Even if a trial court determines an issue differently than would an appellate court, the ruling does not necessarily constitute an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *see also Vinson*, 880 S.W.2d at 824. In determining whether a matter should be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *Tana Oil*, 978 S.W.2d at 740. Further, a trial court abuses its discretion if it does not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its decision on conflicting evidence. *Id.*; *Vinson*, 880 S.W.2d at 823.

In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with the evidence presented at the hearing. *Employers Cas. Co. v. Texas Ass=n of Sch. Bds. Workers=Comp. Self-Ins. Fund*, 886 S.W.2d 470, 474 (Tex. App.▬Austin 1994, writ dism=d w.o.j.). The evidence on which a trial court bases its certification ruling need not be in a form necessary to be admissible at trial. *See Texas Commerce Bank Nat=l Ass=n v. Wood*, 994 S.W.2d 796, 801 (Tex. App.▬Corpus Christi 1999, pet. dism=d w.o.j.); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 615 (Tex. App.▬Texarkana 1995, writ dism=d). We view the evidence in the light most favorable to

6

the trial court=s action, entertaining every presumption that favors its judgment. *Vinson*, 880 S.W.2d at 823; *see also Brittian v. General Tel. Co.*, 533 S.W.2d 886, 889 (Tex. Civ. App.CFort Worth 1976, writ dism=d) (citing *Richardson v. Kelly*, 191 S.W.2d 857 (Tex. 1945)). After such a review, we will reverse a district court=s decision to certify a class only upon a showing that the court abused its discretion in light of the evidence presented in the certification hearing, or that it applied incorrect legal standards in reaching its decision. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1104-05 (5th Cir. 1993); *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471-72 (5th Cir. 1986)).

In conducting the initial evidentiary review, the trial court must conduct a rigorous analysis to determine whether all prerequisites have been met before ruling on class certification. *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex. 2000). Noting that courts, prior to its decision in *Bernal*, were certifying class actions without conducting the proper analysis into each requirement of rule 42, notably section (b)(4) of the rule, the Texas Supreme Court expressly rejected an Aapproach of certify now and worry later.@ *Id.* While some have incorrectly interpreted the supreme court=s language as establishing a *de novo* standard of review for class certification, we are mindful of the remainder of the court=s discussion. *Bernal* clearly instructs that the trial court continues to enjoy discretion in making a class certification decision. However, the trial court must adhere to the rule=s requirements.

> Although it may not be an abuse of discretion to certify a class that could later fail, we conclude that a cautious approach to class certification is essential. The Aflexibility@ of Rule 42 Aenhances the usefulness of the class-action device, [but] actual, not presumed, conformance with [the Rule] remains . . . indispensable.@ *Falcon*, 457 U.S. at 160. As the Supreme Court stressed in *Amchem*: ACourts must be mindful that the rule as now

7

composed sets the requirements they are bound to enforce. . . . The text of a rule . . . limits judicial inventiveness.@ *Amchem Prods. Inc.*, 521 U.S. at 620; *see also General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1996) (emphasizing Athe importance of the trial court=s obligation to determine that the protective requirements of Texas Rule 42 are met@).

*Bernal*, 22 S.W.3d at 435. Our commitment to *stare decisis* concerning the standard of review in class action certification cases must recognize the concerns created by the class action landscape before *Bernal* while maintaining a grasp on the rationale behind that standard and the reasons for the Aflexibility of rule 42.@ *See* Tex. R. Civ. P. 42(c)(1) (trial court may alter, amend, or withdraw class certification order at any time before final judgment). Rule 42(c)(1) provides the trial court with the tools needed to respond to changes in the case=s development. *Intratex*, 22 S.W.3d at 407 (appellate court must remand when it identifies definitional problem in class certification order because prescribing proper definition is committed to trial court=s discretion).

Our review of the record in this case supports our conclusion that the trial court did not abuse its discretion in certifying the class. The trial court conducted a thorough certification hearing in which it went beyond the parties=pleadings in order to examine the claims, defenses, relevant facts, and applicable substantive law of this case in order to make a meaningful determination of the certification issues. The record before us indicates that the trial court conducted a rigorous analysis of all issues presented and arrived at a cautious decision in certifying the class. The clerk=s record, combined with the first, second, and third supplemental clerk=s records, consists of approximately 2,800 pages of pleadings and documentary evidence. Additionally, the record contains a multiple volume reporter=s record. At the certification hearing, Rowe presented one witness, deposition excerpts from five witnesses, four affidavits

from both expert and non-expert witnesses, as well as discovery responses and other documentary evidence. National followed by presenting three live witnesses, four affidavits, its expert witness=s report, portions of a deposition, and additional documentary evidence. At the conclusion of the certification process, the trial court decided to certify the class. The extensive and detailed certification order, findings of fact, and conclusions of law demonstrate that the trial court conducted a rigorous review of the information presented and determined that this case met the *Bernal* test of actual, rather than merely presumed, compliance with the requirements of rule 42. We are convinced that the trial court made an informed, cautious, and proper decision that common issues predominated over individual issues, and that all issues in this case could be considered in a manageable, time-efficient, and fair manner.

Finally, we must not lose sight of the fact that class action certification is a trial court decision made at the very inception of the litigation process. One of the reasons we accord the abuse of discretion standard to the trial court is that such issues as trial plan, the management of the discovery process, and a litany of other factors of necessity will have only been determined as a preliminary matter when class certification is addressed by the trial court. During the course and development of a class action, trial courts may need to alter, amend, or modify the original class certification order. *See, e.g.*, *De Los Santos v. Occidental Chem. Corp.*, 933 S.W.2d 493, 494 (Tex. 1996) (certification of class originally granted as mandatory class, changed to opt-in class during pretrial discovery period, and returned to mandatory class after initial phase of trial); *Wood v. Victoria Bank & Trust Co., N.A.*, 69 S.W.3d 235, 237 (Tex. App.CCorpus Christi 2001, no pet.) (holding trial court acted within its discretion in decertifying class); *Nissan Motor Co., Ltd. v. Fry*, 27 S.W.3d 573, 589 (Tex. App.CCorpus Christi 2000, pet.

denied) (remanding to trial court to determine whether establishment of sub-classes can cure definitional problem in original certification order); *Pierce Mortuary Colls., Inc. v. Bjerke*, 841 S.W.2d 878, 879 (Tex. App.CDallas 1992, writ denied) (trial court amended certification order, expanding class to include additional group of individuals and adding two years to time period in which injury could have occurred). Cases such as these demonstrate how the management of class actions can warrant changes to the original certification order and why appellate courts must employ an abuse of discretion standard in ruling on challenges to the granting or denial of class certification. Indeed, the whole process of class action certification presupposes the changing nature of the litigation process and gives the trial court ample authority to shape the litigation.

### REQUIREMENTS OF CLASS CERTIFICATION

Rule 42, governing class actions, is patterned after its federal counterpart. Consequently, federal decisions and authorities interpreting current federal class action requirements are persuasive authority. *Bernal,* 22 S.W.3d at 433. The class action serves as a mechanism to eliminate or reduce the threat of repetitive litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for individual claims that are too small to make independent actions economically viable. *See Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000). The principal purpose of the class action device is efficiency and economy of litigation. *See id.* (discussing origins and general design of class action device). Thus, when properly used, a class action saves the court=s and the parties=resources by allowing class-wide issues to be tried in an economical fashion. *See id.* at 452 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1981)).

10

All class actions must satisfy the following four threshold requirements: (1) numerosityCthe class is so numerous that joinder of all members is impracticable, (2) commonalityCthere are questions of law or fact common to the class, (3) typicalityCthe claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) adequacy of representationCthe representative parties will fairly and adequately protect the interests of the class. *See* Tex. R. Civ. P. 42(a); *Bernal*, 22 S.W.3d at 433. In addition to these prerequisites, class actions must satisfy at least one of four subdivisions of rule 42(b). Here, the trial court found that Rowe established that this class action satisfies rule 42(b)(4), which requires questions of law or fact common to the class to predominate over questions affecting only individual members and that class treatment be superior to other available methods for the fair and efficient adjudication of the controversy. Tex. R. Civ. P. 42(b)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Bernal*, 22 S.W.3d at 433.

## DISCUSSION

### *Trial Plan*

National challenges the trial court=s order granting class certification on the grounds that the requirements of rule 42 have not been satisfied. National=s most significant challenge attacks the trial court=s proposed trial plan. The trial plan specifies that the class in this case will be an opt-out class. Also, in order to determine which class members had after-born or after-adopted children, the trial court intends to attach a Proof of Additional Children form to the notice sent to all class members. This form will be filled out and returned by the class members. Class members who have additional children who are still under twenty-five years of age may, by this process, exclude themselves from the class.

11

Furthermore, the notice will provide an opportunity to verify whether there is a way to know the ages of children listed on a policyholder=s application and which child rider form number applies to each class member without requiring a manual review of National=s files. But if a manual review is required, then National must pay the expenses of conducting the review and preparing the results. The court found this allocation of expenses fair in light of the fact that Rowe=s counsel is mailing out the notice and Proof of Additional Children forms at its expense.

The trial plan also addresses various discovery needs. The notice and Proof of Additional Children forms will ask class members whether they have had after-born or after-adopted children since the rider was purchased. Because National has indicated that it may want to depose or otherwise obtain discovery from every class member, the trial plan states that an adequate time for such discovery will be allowed, but that the trial court may streamline the discovery to ensure that it is not overly burdensome. The trial court also explains that it will entertain a no-evidence motion for summary judgment as to all class members where no evidence has been obtained of after-born or after-adopted children. If Rowe carries the burden of proof on this issue, the trial plan calls for proof of claim forms to be issued during the damages phase of the trial. Those class members with children under twenty-five years of age would then be allowed to exclude themselves from the class.

The trial plan also calls for a single jury to try this case in two phases. The first phase will determine liability and damages. The court anticipates that most of the damages calculation will be presented through expert testimony and that the jury could, after hearing such evidence, decide any disputes about whether a class member did in fact have after-born or after-adopted children. However, the trial plan

12

anticipates that this issue may be decided either by stipulation or by partial summary judgment. The second phase would address punitive damages if the jury verdict from the first phase justifies such a submission. After the trial, the court will hold a hearing on the entry of judgment which would allocate any undivided damages awards to the class members. Finally, the trial plan addresses National=s statute of limitations defense and finds that a trial of that issue would be manageable and that the submission of a fraudulent concealment and a discovery rule question to the jury would allow relief to be awarded only to those class members who fall within the statute of limitations.

National claims that the trial plan=s attempt to expedite the resolution of individual issues alters the parties= burdens, deprives National of the ability to attack Rowe=s case, and unduly restricts it from presenting viable defenses. *See Bernal*, 22 S.W.3d at 435. National=s most vocal objection to the plan focuses on the Proof of Additional Children form procedure. National believes that the trial court, through the use of the Proof of Additional Children form, has created a presumption favoring the class. This alleged presumption, National contends, shifts the burden of proving the absence of after-born or after-adopted away from the individual class members and towards National. National contends that the trial plan allows for a class member to prove damages merely by remaining silent about whether additional children exist. National carries its argument to a conclusion that this presumption will adversely affect National in a final damages calculation.

However, National=s argument ignores both the preliminary nature of this trial plan as well as the uncertainty surrounding the development of the litigation. The trial plan does not say that the Proof of Additional Children forms or the evidence obtained from them will be admissible at trial. The only clear

13

inference that can be drawn from the trial plan is that the Proof of Additional Children forms serve as the initial discovery tool employed by the trial court. In fact, the trial court anticipated that the forms might not be returned or that further information might be needed in order for National to present a defense. Therefore, the court specifically referenced the possible need for additional discovery, albeit in a streamlined manner due to the numerosity of the class, in order to obtain information favorable to National=s defense. Thus, the trial plan anticipates the need to provide National the opportunity to develop its defense based on the fact that certain individuals may have continued paying premiums in reliance on National=s promise to preserve coverage for additional children. Accordingly, we conclude that the trial plan does not preclude National from developing its defense. The discovery methods outlined in the trial plan protect each party=s opportunity to adequately and vigorously present any material claims and defenses. *Bernal*, 22 S.W.3d at 437.

National next attacks the trial plan on the issue of reliance. Focusing on Rowe=s allegations concerning the DTPA, the insurance code, fraud, and negligent misrepresentation, National argues that the trial court has eliminated Rowe=s burden of proving reliance. However, we note initially that the trial court began its focus with the breach of contract claims that apply uniformly to all class members. Reliance is not required to prove a breach of contract. *See Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.CHouston [1st Dist.] 1997, no pet.) (AThe elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.@).

14

As to the non-contract claims alleged in Rowe=s petition, the trial court has not eliminated reliance from consideration in this case. The trial court=s order states that the presumed direction of the trial on these non-contract claims will focus on the uniform conduct of National, its billing policies, and its failure to refund *any* premiums paid for terminated riders. The trial court also determined that some claims do not require a showing of reliance. If various class members have actually had or planned to have additional children after their youngest child attained twenty-five years of age, reliance becomes a substantive issue only for those discrete claims. The discovery tools employed in this case will determine whether reliance is a substantial issue, but until the end of the discovery period, the trial court=s discretion should not be disturbed merely on the *speculation* that a specific issue might arise that could be detrimental to a *portion* of the class. We recognize that the trial court may decertify or reshape the class to address issues such as reliance. *See* Tex. R. Civ. P. 42(c)(1).

National=s next challenge to the trial plan concerns its statute of limitations defense. The applicable statute of limitations in this case is two years for the tort causes of action and four years for the breach of contract claims. Tex. Civ. Prac. & Rem. Code Ann. '' 16.003, .051 (West 1997 & Supp. 2002). To survive the limitations defense, Rowe has pleaded both the discovery rule and fraudulent concealment. The discovery rule operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). A plaintiff may rely on the discovery rule only when the nature of the injury is both inherently undiscoverable and objectively verifiable. *Id*. Fraudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense.

15

*Computer Assocs. Int=l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Whether a plaintiff knew or should have known of an injury is generally a question of fact for the jury. *Houston Endowment Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 160 (Tex. App.CHouston [14th Dist.] 1998, no writ). National correctly asserts that the discovery rule and fraudulent concealment may require proof of each individual class member=s subjective knowledge concerning discovery of the injury alleged. However, National misinterprets the trial court=s plan for determining this issue.

The trial plan proposes to submit a question to the jury on fraudulent concealment and the discovery rule so that the jury may determine when a reasonable policyholder had met the test for either means of overcoming National=s limitations defense. National reads this proposal as lowering Rowe=s burden from showing each class member=s subjective knowledge to simply showing when a reasonable person should have known. National=s interpretation incorrectly assumes that the jury will decide whether class members may overcome the limitations defense. The trial plan merely proposes to have the jury try these discrete issues and determine a date or time when the injuries became discoverable. The trial plan clearly states that this proposed course can effectively manage this issue because Rowe proposes to try this issue based on theories of breach of contract and National=s uniform conduct in designing the riders, failing to refund payments, and continuing to bill for expired riders. Therefore, we conclude that at this preliminary stage, the trial court has not lowered Rowe=s burden. The trial plan anticipates that the discovery process will produce information from each class member regarding when that person first had sufficient knowledge of the injuries alleged in this lawsuit. The trial court may then apply the discovery results to the jury=s finding and determine which class members= claims fail as a result of limitations. Thus, the trial plan proposes a way

16

to manage the trial of this issue and does not lower Rowe=s burden in overcoming National=s affirmative defense.

National=s final two challenges to the trial plan also fail to persuade us that the trial court abused its discretion. Without providing any authority, National claims that the trial court erred in determining that the breach of contract claim was the primary claim asserted by Rowe. The trial court has discretion in managing this litigation. Tex R. Civ. P. 42(c)(1). The trial court=s characterization of its preliminary determinations concerning the management of this case cannot be said to have amounted to an abuse of discretion. National=s final attack on the trial plan relies on Texas Insurance Code section 36.159(c). This section of the code deals with the general subpoena powers of the Texas Department of Insurance and does not have any effect on the parties to this litigation. Having dismissed these final two issues, and having determined that the trial court did not abuse its discretion in devising the trial plan for this case, we overrule National=s first, second, fifth, and sixth issues.

### *Commonality*

Although National phrases its second issue as challenging the trial court=s determination that common issues predominated over individual issues, it fails to brief an argument relating to the rule=s predominance requirement. *See* Tex. R. Civ. P. 42(b)(4). Therefore, National appears to have waived any challenge to the predominance requirement. *See* Tex. R. App. P. 38.1(h). However, because National properly raises a challenge to the trial court=s finding of commonality, we will address both commonality and predominance as a single issue.

17

Rule 42(a)(2) does not require that all or even a substantial portion of the legal and factual questions be common to the class. *Nissan Motor Co. v. Fry*, 27 S.W.3d at 588. It requires only that *some* legal or factual questions be common to the class. *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 358 (Tex. App.CAustin 1999, pet. dism=d w.o.j.). The commonality requirement means that an issue of law or fact exists that inheres in the complaints of all the class members. *Entex v. City of Pearland*, 990 S.W.2d 904, 919 (Tex. App.CHouston [14th Dist.] 1999, no pet.). Questions common to the class are those which, when answered as to one class member, are answered as to all class members. *Nissan Motor Co.*, 27 S.W.3d at 588. The common issues may be those of law or fact; there need not be common issues of both law and fact, and a *single* common question may provide sufficient grounds for class certification. *Id*. The commonality requirement is generally considered satisfied where (1) many members of the class are subject to the same misrepresentation or omissions by reason of common documents, or (2) the defendant is alleged to have engaged in a common course of conduct. *Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631, 643 (Tex. App.CCorpus Christi 1997, pet. dism=d w.o.j.).

The trial court found that Rowe had established commonality because each child rider contains substantially similar language in the termination clauses and the claims of the class focus largely on this language.[3] Rowe further established commonality by demonstrating that the class will try the case based

---

[3]    The trial court included the following language in its findings of fact and conclusions of law on commonality:

> Insurance on a child stops on the rider anniversary when the child is twenty[-five] (25) years [old] unless it stops earlier in accordance with this section.

> Premiums are not due for this rider after it has stopped. If we accept a premium

on the uniform breach, or anticipatory breach, of contract based on National=s design and implementation of the riders. Additionally, the trial court found that National=s uniform conduct in billing and collecting premiums on these riders created common issues with regard to Rowe=s tort claims. Finally, the trial court summarized its commonality determination into four questions focusing on (1) whether the riders are ambiguous, (2) whether National=s uniform conduct amounted to a breach of the rider contracts, (3) whether National engaged in tortious conduct by its uniform billing policy and failure to refund premiums paid after termination, and (4) whether the class is entitled to a constructive trust because of National=s conduct.

National challenges the trial court=s findings as being Atoo general to satisfy the commonality requirement because each simply restates the causes of action.@ In support of this proposition, National cites *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 475 (S.D. Tex. 2000).[4] However, in *Kelley*, the federal district court did not find commonality because the alleged violations took many different forms. The court indicated that in order for certification to be proper, the contracts in issue would have had to be Aa single type of contract that is virtually, if not completely, identical in each transaction.@ *Id*. (quoting *Durrett v. John Deere Co.*, 150 F.R.D. 555, 557 (N.D. Tex. 1993)). Here, each class member entered into an

---

after termination, it does not mean we are liable for benefits under this rider or that we waive the termination. We will refund any premiums so accepted.

[4] The language on which National relies from *Kelley* is mere dicta. The court states, APlaintiff has merely restated the three causes of action as the common issues. If Courts were to address the commonality issue at this level of generality, the requirement would be met every time. Instead, a Court must look at more particular factual and legal issues.@ *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 475 (S.D. Tex. 2000).

agreement for insurance coverage using virtually identical contracts issued by National. Furthermore, National=s alleged tortious conduct was uniform for every class member. Therefore, because National engaged in a common course of conduct and entered into agreements with each class member based on virtually identical documents, we cannot say that the trial court=s initial determination that the commonality requirement had been satisfied was an abuse of discretion.

### *Choice of Law*

The trial court made an initial determination to apply Texas law in this class action litigation. Which state=s law governs an issue is a question of law for the court to decide. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000)). But determining the state contacts to be considered by the court in making this legal determination involves a factual inquiry. *Hughes*, 18 S.W.3d at 204. Texas courts apply the Restatement=s Amost significant relationship@ test to decide choice-of-law issues. *Torrington*, 46 S.W.3d at 848; Restatement (Second) of Conflict of Laws '' 6, 145, 188, 192 (1971). Section 6 of the Restatement lists the following general factors used to decide a choice-of-law question:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

20

(f)    certainty, predictability and uniformity of result, and

(g)    ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws ' 6(2).

In addition to applying the principles enumerated in section 6, we must also refer to sections 145 and 188 because Rowe=s causes of action encompass both tort and contract claims.  Section 145 contains the following factual matters to be considered when applying these principles to a tort case: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  *Id.* ' 145(2).  Under section 188 of the Restatement, we determine contractual rights and duties by the law of the state with the most significant relationship to the transaction and the parties.  *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997); Restatement (Second) of Conflict of Laws ' 188(1).  When, as here, the parties have not expressly chosen the applicable law, we consider the following contacts in determining which law governs their controversy: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the location of the contract=s subject matter; and (e) the parties= domicile, residence, nationality, place of incorporation, and place of business.  Restatement (Second) of Conflict of Laws ' 188(2).

Although National is domiciled in Colorado, it does not maintain any offices or employees in Colorado, and its principal place of business and administrative offices are located in Austin, Texas.

National maintains all contact with policyholders from its Austin offices, it transmits correspondence containing the billing notices from Austin, and it receives all premium payments in Austin. Furthermore, all of the child riders at issue in this case were designed in Texas, and all conduct allegedly causing injury to the class members in both contract and tort occurred as a result of National=s activities in Texas. While only twenty-seven percent of the riders purchased by class members were sold in Texas, every class member maintained direct contact with Texas in originally purchasing the rider and paying premiums. Additionally, National=s obligations of performance for any claims made under the rider occurred in Texas. Applying these considerations to the list of factors in sections 188 and 145 of the Restatement, the choice to use Texas law appears proper.

National attempts to overcome this strong indication that Texas law should apply by arguing that section 192 of the Restatement requires that the law of the individual insured=s state should apply. Section 192 states:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in ' 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws ' 192. National focuses solely on the first part of this section. The general rule espoused by section 192 is not applicable in this case. Rather, we must look to the exception found in this section for guidance because of the facts and surrounding procedural concerns of this case. Because we believe that Texas Ahas a more significant relationship under the principles stated in

22

section 6@ to this case, section 192=s rule favoring application of the law of the insured=s state does not apply. *Id.*

The basic principles of section 6 favor the application of Texas law. It is reasonable to assume that National expected Texas law to apply to its actions in contracting for, billing, and collecting premiums for its riders. *See id.* ' 6(2)(d) (protection of justified expectations). With a large number of class members having purchased their riders in Texas and the action having been filed in Texas, the ease of determination and application factor favors Texas law. *See id.* ' 6(2)(g) (ease in determination and application of law to be applied). In a class action such as this one, with a single defendant located in one forum and a large number of class members scattered throughout forty-one states, the desire for certainty, predictability, and uniformity of result weigh heavily toward application of Texas law. *See id.* ' 6(2)(f) (certainty, predictability, and uniformity of result). Applying the facts of this case to the guiding principles of the Amost significant relationship@ test, we conclude that the decision to apply Texas law to Rowe=s claims is appropriate.

National=s remaining challenge to the application of Texas law relies on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). National claims that Texas does not meet the constitutional requirements as enunciated in *Shutts*. A[Texas] must have a >significant contact or significant aggregation of contacts= to the claims asserted by each member of the plaintiff class, contacts >creating state interests,= in order to ensure that the choice of [Texas] law is not arbitrary or unfair.@ *Id*. at 821-22 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). The facts of this case, as outlined above, demonstrate that Texas meets this constitutional requirement.

23

Furthermore, National=s reliance on *Shutts* ignores the factual differences between the claims of the class in *Shutts* and in this case. *Shutts* was a class action in which Kansas courts applied Kansas law to the claims of all class members. The suit involved unpaid royalties on gas leases. Only approximately one-quarter of one percent of the gas leases involved in the suit were located in Kansas. The defendant was a Delaware corporation with its principal place of business in Oklahoma. Three named representatives filed suit in Kansas on behalf of approximately 33,000 class members located in all fifty states, the District of Columbia, and certain foreign jurisdictions. Two of the class representatives resided in Oklahoma; only the third resided in Kansas. After notice was mailed out and the responses were received, the Kansas court certified a class of 28,100; fewer than 1,000 of those class members lived in Kansas. The contacts with Kansas were not significant and thus the Supreme Court declared that Kansas failed to meet the proper constitutional limitations on a forum=s ability to apply its law to the claims of every class member of a nationwide class. In our case, Texas=s contacts with both the defendant and each member of the plaintiff class rise to the level required by the Constitution for this type of class action. We overrule National=s third and fourth issues.

### *Additional Issues*

In its seventh issue, National contends that the trial court erred in admitting expert testimony without undergoing a *Robinson* analysis. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex. 1996). It is widely accepted in our class action jurisprudence that a trial court need not base its class certification ruling on admissible evidence. *E.g.*, *Monsanto Co. v. Davis*, 25 S.W.3d 773, 784 (Tex. App.CWaco 2000, pet. dism=d w.o.j.); *Texas Commerce Bank v. Wood*, 994 S.W.2d at 801;

24

*St. Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc.*, 929 S.W.2d 25, 30 (Tex. App.CTexarkana 1996, no writ). Courts need not apply the same level of evidentiary standards at a class certification hearing as would be applied at trial. *Microsoft Corp. v. Manning*, 914 S.W.2d at 615. At a certification hearing, the trial court must only have enough material before it to determine the nature of the claims at issue. *Id*. If the trial court properly bases its decision on that material, it does not abuse its discretion, even if the material offered at the hearing ultimately fails at trial. *Id.*; *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 376 (Tex. App.CEl Paso 1993, no writ).

The concerns voiced by the Texas Supreme Court in *Robinson* dealt largely with the possibility that juries might give undue weight and credibility to unreliable testimony simply because the witness was designated as an expert. *See Robinson*, 923 S.W.2d at 553. Those same concerns are not present in a class certification hearing before a trial court. In *Microsoft v. Manning*, the defendant voiced an identical challenge to the production of expert testimony at the certification hearing. 914 S.W.2d at 615. The *Microsoft* trial court accepted the material offered by the expert and, along with a great deal of other material, certified the class without any indicia of how much weight was given to the expert=s opinions. The court of appeals considered the *Robinson* challenge and determined that, in accordance with the principles allowing the consideration of non-admissible evidence at a certification hearing, the trial court did not abuse its discretion by allowing the presentation of the expert=s testimony. National=s challenge in this case is nearly identical to that raised in *Microsoft*. The only discernable difference is that Rowe=s experts submitted affidavits rather than live testimony. We agree with the holding in *Microsoft* and overrule National=s seventh issue regarding the admission of expert testimony.

25

In its final issue, National argues that the trial court erred in ordering National to bear some of the costs of identifying the names and addresses of some class members for notification purposes. The trial court ordered National to allow Rowe access to National=s computer systems and records, to cooperate with Rowe=s counsel, and to compile an electronic database containing a mailing list of the policyholders within the class. On appeal, National objects to this order and cites *American Express Travel Related Services Co. v. Walton* for the proposition that the proponent of class certification must provide notice to all class members and bear the cost of such notice. 883 S.W.2d 703, 709-10 (Tex. App.CDallas 1994, no writ).

While National cites the general rule, the United States Supreme Court has long recognized an exception to that rule. In instances such as these, where the defendant is able to perform a necessary task, such as compiling a list from its internal records to be used by class counsel in mailing the notice, with less difficulty and expense than class counsel, the trial court may properly exercise its discretion and order the defendant to perform the task in question. *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 356 (1978). Furthermore, the trial court enjoys the discretion to decide whether the cost of performing this task should remain with the defendant or be borne by the class. *Id*. at 358. The trial court has a great deal of discretion in determining who should bear the costs of performance. *Id*. at 359 (if substantial, may be proper for plaintiff class to reimburse defendant; if insubstantial, defendant can be ordered to pay; if task would be done in ordinary course of business, regardless of substantiality, defendant may properly bear cost). In light of the Supreme Court=s holding in *Oppenheimer*, we believe the trial court acted within its

26

discretion. The trial court=s order allocates to National only an insubstantial expense of compiling an electronic database.[5] We overrule National=s eighth issue.

## CONCLUSION

Having reviewed the record and considered the arguments of both parties, we conclude that the trial court did not abuse its discretion in ordering class certification. The trial court=s order is affirmed.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   August 8, 2002

---

[5] The *American Express* case to which National cites involved an expense of $100,000. *American Express Travel Related Servs. Co. v. Walton*, 883 S.W.2d 703, 709-10 (Tex. App.CDallas 1994, no writ). In this case, National contends that compiling the database will take approximately 45 hours. Assuming a reasonable hourly billing for performing this task, any expense borne by National will be relatively insubstantial. Furthermore, if the expense proves more substantial than all parties originally estimated, National may petition the trial court to require reimbursement from Rowe.

27

Publish